BOSTON TOW BOAT COMPANY *vs.* STATE
TAX COMMISSION.

Suffolk. October 31, 1974. — December 9, 1974.

Present: TAURO, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Taxation,* Sales tax, Use tax. *Constitutional Law,* Taxation, Interstate Commerce.

The application of the use tax as provided by G. L. c. 64I, §§ 2, 7, to a tow boat purchased outside Massachusetts but then used in Massachusetts waters was unconstitutional in that the sales tax exemption granted by G. L. c. 64H, § 6 (o), with respect to similar vessels built in Massachusetts worked an unlawful discrimination against interstate commerce. [476-479]

APPEAL from a decision of the Appellate Tax Board.

The case was submitted on briefs.

*Jerome M. Leonard & Scott T. FitzGibbon* for the taxpayer.

*Robert H. Quinn,* Attorney General, *Walter H. Mayo, III,* Assistant Attorney General, *& Joseph A. Grasso, Jr.,* Deputy Assistant Attorney General, for the State Tax Commission.

QUIRICO, J. This is an appeal under G. L. c. 58A, § 13, as amended through St. 1969, c. 692,[1] by the Boston Tow Boat Company (taxpayer) from a decision of the Appellate Tax Board (board) denying an abatement of a use tax paid under G. L. c. 64I. The decision of the board is final as to findings of fact, and our review is limited to matters of law.

---

[1] Since this appeal was claimed, G. L. c. 58A, § 13, has been further amended, by St. 1973, c. 1114, § 5, to bring it into conformity with the new Rules of Appellate Procedure, 365 Mass. 844, which took effect on July 1, 1974.

G. L. c. 58A, § 13. *Schlaiker* v. *Assessors of Great Barrington,* 365 Mass. 243, 245-246 (1974).

The taxpayer is in the business of owning and operating towboats in Boston harbor. It is a Delaware corporation which, on February 28, 1969, became the successor by merger to a Massachusetts corporation of the same name. In October, 1968, the taxpayer's predecessor put in service the M/V Walton, a harbor tug of 123 tons burden purchased by it from the Southern Shipbuilding Company of Louisiana. This vessel is documented in Boston where it presumably is employed in the taxpayer's business.

In January, 1969, the taxpayer's predecessor filed its sales and use tax return for the last quarter of 1968 and paid the use tax of $17,530.59 reported due therein. Of this amount, $17,422.80 was attributable to the purchase of the M/V Walton. In June, 1971, the taxpayer applied to the State Tax Commission (commission) for an abatement of the tax paid with respect to the M/V Walton. The commission denied the application, and the taxpayer appealed to the board. The board decided in favor of the commission, and the taxpayer appealed to this court.

Before the board, the taxpayer argued, as it does here, that the application of the use tax in the circumstances of this case is unconstitutional because of its discriminatory effect on interstate commerce. The statutory framework which gives rise to this argument is as follows: General Laws c. 64H, § 6 (o), inserted by St. 1967, c. 757, § 1, exempts from the sales tax imposed on most sales of goods in Massachusetts "[s]ales of vessels or barges of fifty tons burden or over when constructed in the commonwealth and sold by builders thereof." By contrast, if such a vessel or barge is constructed and sold outside the Commonwealth to a purchaser who thereafter brings it here, as occurred in this case, a use tax of three per cent of the sales price must be paid. G. L. c. 64I, §§ 2, 7. The taxpayer asserts that "[d]enying the exemption of Section 6 (o) of Chapter 64H to vessels constructed outside the Commonwealth while providing it to vessels constructed within the Commonwealth would constitute discrimination against inter-

state commerce in violation of the commerce clause. It would consequently also violate Section 6 (a) of Chapter 64H, which provides a sales and use tax exemption where required by the United States Constitution." For the reasons expressed below, we agree with the taxpayer's contention.

The sales tax, G. L. c. 64H, and the use tax, G. L. c. 64I, are designed to be complementary. The sales tax imposes an "excise . . . upon sales at retail of tangible personal property in the commonwealth by any vendor at the rate of three per cent of the gross receipts of the vendor from all such sales of such property, except as otherwise provided." G. L. c. 64H, § 2. In other words, any sale made in the Commonwealth, unless exempted by G. L. c. 64H, § 6, is subject to the sales tax. The use tax, on the other hand, "[e]xcept as otherwise provided . . . is . . . imposed upon the storage, use or other consumption in the commonwealth of tangible personal property purchased from any vendor for storage, use or other consumption within the commonwealth at the rate of three per cent of the sales price of the property." G. L. c. 64I, § 2. Although an isolated reading of the two quoted sections might lead to the conclusion that the sales and use taxes were duplicative since personal property which was both sold in the Commonwealth and then stored, used, or otherwise consumed here would be subject to both taxes, such is not the case. General Laws c. 64I, § 7, exempts from the use tax (a) sales on which a Massachusetts sales tax has been collected, (b) sales exempt from the Massachusetts sales tax, and (c) sales on which a tax was due and paid in another State or Territory of the United States to the extent that this foreign tax equaled that which would be imposed in Massachusetts. These provisions make it clear that the use tax was "designed to prevent the loss of sales tax revenue by out of State purchases." *First Agricultural Natl. Bank* v. *State Tax Commn.* 353 Mass. 172, 181 (1967), revd. on other grounds, 392 U. S. 339 (1968). Clearly, therefore, the sales and use excises are complementary components of a unitary taxing program created to reach all transactions

(unless specifically exempted by G. L. c. 64H, § 6, or G. L. c. 64I, § 7) in which tangible personal property is sold inside or outside the Commonwealth for storage, use, or other consumption within the Commonwealth.

The major argument of the commission[2] seems to be "that interstate commerce ended and the 'taxable moment' occurred when the local activity began, i.e., when the vessel was documented at Boston and first put in service in Massachusetts waters. Where a 'taxable moment' exists, a state can constitutionally impose its use tax." While the general principle stated in the preceding quotation may be correct, it is inapplicable to this case.

In *Henneford* v. *Silas Mason Co. Inc.* 300 U. S. 577 (1937), the Supreme Court upheld a Washington use tax similar in nature to G. L. c. 64I. Speaking for the court, Mr. Justice Cardozo rejected the argument that the use tax was a burden on interstate commerce and, therefore, violative of the commerce clause, United States Constitution, art. 1, § 8. He was careful, however, to consider the sales tax and the use tax in pari materia: "Equality is the theme that runs through all the sections of the statute. . . . When the account is made up, the stranger from afar is subject to no greater burdens as a consequence of ownership than the dweller within the gates. The one pays upon one activity or incident, and the other upon another, but the sum is the same when the reckoning is closed. Equality exists when the chattel subjected to the use tax is bought in another state and then carried into Washington. It exists when the imported chattel is shipped from the state of origin under an order received directly from the state of destination. In each situation the burden borne by the owner is balanced by an equal burden where the sale is strictly local." *Id.* at 583-584.

It has become settled doctrine that interstate commerce can be made to pay its own way through taxation reason-

---

[2] The Attorney General in his brief for the commission seems to concede the unconstitutionality of the denial of the exemption in this case, and merely sets forth the argument of the commission "[i]n deference to the Board and to the Commission."

able in relation to services rendered by the taxing State. *Evansville-Vanderburgh Airport Authy. Dist.* v. *Delta Airlines, Inc.* 405 U. S. 707, 714 (1972). Nevertheless, even reasonable taxes must not discriminate against interstate commerce. The nondiscriminatory tax upheld in the *Henneford* case is unlike the less evenly drawn measures struck down in other decisions. In *Mueller* v. *Commissioner of Pub. Health,* 307 Mass. 270 (1940), for example, we held unconstitutional as a burden on interstate commerce a statute which required out-of-State manufacturers to pay a fee not required of their local counterparts. In *Hynson, Westcott & Dunning, Inc.* v. *Commissioner of Pub. Health,* 346 Mass. 606 (1964), we similarly found invalid a statute which subjected foreign drug manufacturers to a $25 license fee for every place of business in the Commonwealth while requiring only a single $25 payment from a local manufacturer regardless of the number of its places of business. This pattern was held to constitute "an obvious discrimination against the out-of-State manufacturer." *Id.* at 610.

In *Halliburton Oil Well Cementing Co.* v. *Reily,* 373 U. S. 64, 70 (1963), Mr. Chief Justice Warren stated the rule thus: "[E]qual treatment for in-state and out-of-state taxpayers similarly situated is the condition precedent for a valid use tax on goods imported from out-of-state." In the *Halliburton* case, the Supreme Court held unconstitutional as a burden on interstate commerce a Louisiana sales-use tax scheme as applied to two classes of equipment used in Halliburton's oil well servicing business. Halliburton manufactured the first class of equipment for itself outside Louisiana and then brought it into the State. Louisiana imposed a use tax on this equipment based on the value of Halliburton's labor and shop overhead as well as the cost of all the component materials. If all these expenses had been incurred inside Louisiana, only the cost of the materials would have been included in the tax base; the value of the labor and shop overhead would not have been considered. The second class of equipment was purchased secondhand outside Louisiana from sellers not

regularly engaged in selling such equipment. A use tax was imposed on this equipment. No tax at all would have been imposed had the sales taken place within Louisiana. *Id.* at 66-68. The court saw "no reason to depart from the strict rule of equality adopted in *Silas Mason,*" and concluded "that the Louisiana use tax as applied to the appellant's specialized equipment discriminates against interstate commerce." *Id.* at 73.

The Massachusetts tax here at issue also discriminates against interstate commerce. It is therefore unconstitutional in so far as it imposes a greater tax on goods manufactured outside the Commonwealth than it imposes on goods manufactured within the Commonwealth. Massachusetts is free to apply its sales or use tax to the sale or use of ships such as the M/V Walton whether they be built in Massachusetts or elsewhere. The Commonwealth is also free to exempt the sale or use of such ships from the reach of its sales and use tax. But the Commonwealth cannot have it both ways by exempting only vessels built in the Commonwealth while taxing those built elsewhere.

The decision of the Appellate Tax Board is reversed. The case is remanded to the board. An abatement is to be granted in accordance with this opinion. The taxpayer is to have costs of appeal.

*So ordered.*