# M & T CHARTERS, INC. *vs.* COMMISSIONER OF REVENUE.

Suffolk.   December 8, 1988. — February 14, 1989.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Administrative Law*, Substantial evidence. *Taxation*, Sales and use tax; Abatement; Appellate Tax Board: appeal to Supreme Judicial Court. *Constitutional Law*, Taxation, Commerce clause, Interstate commerce.

The Commissioner of Revenue properly assessed, pursuant to G. L. c. 64I, a use tax on a used yacht purchased in Florida from a Missouri corporation through a Florida selling dealer, by a taxpayer incorporated in New Hampshire, where the taxpayer had stored and used the vessel in Massachusetts within six months after its purchase and had not paid a sales or use tax to any jurisdiction, and where the taxpayer failed either to overcome the effect of the statutory presumption of G. L. c. 64I, § 8 (*f*), making the use tax applicable to property brought into Massachusetts within six months of purchase, or to show any statutory right to an exemption from the use tax. [140-142]

The commerce clause of the United States Constitution did not prohibit the imposition of the Massachusetts use tax, pursuant to G. L. c. 64I, on a used yacht purchased in Florida from a Missouri corporation through a Florida selling dealer, by a taxpayer incorporated in New Hampshire which had stored and used the vessel in Massachusetts within six months after its purchase, where a substantial nexus existed between the property to be taxed and the taxing State, where the tax was fairly apportioned, where the tax did not discriminate between residents and nonresidents, and where the tax was fairly related to the services provided by the taxing State. [142-144]

On appeal of a decision of the Appellate Tax Board affirming the denial of an abatement of a use tax assessed under G. L. c. 64I on a used yacht which a taxpayer, a New Hampshire corporation, had purchased in Florida and caused to be brought into Massachusetts within six months of purchase, this court, stating that the board made no findings or rulings regarding whether the taxpayer's reliance on professional advice constituted "reasonable cause" for failure to file a tax return, and that it appeared from the record that assessed interest and penalties had been improperly calculated from the date of purchase, remanded the case to the board for findings and rulings on the issue of whether penalties were properly assessed and for recomputation of interest and penalties, if any, from the date the yacht was brought into the Commonwealth. [144]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael J. McGlone* for the taxpayer.

*Rosanna Cavallaro*, Assistant Attorney General, for the Commissioner of Revenue.

LYNCH, J.  M & T Charters, Inc. (taxpayer), appeals from a decision of Appellate Tax Board (board), affirming the denial of an abatement of a use tax assessed on a yacht purchased by the taxpayer. G. L. c. 64I, §§ 2, 3, 8 (*f*) (1986 ed.). The taxpayer contends that the vessel was not purchased "for storage, use or consumption" within the Commonwealth so as to come within the ambit of the statute; that the taxpayer successfully rebutted the statutory presumption that goods brought into the Commonwealth within six months of purchase are presumed to have been bought for storage, use, or consumption within the Commonwealth; that the subject vessel is exempt from use tax as being "fifty tons burden or over" or as being purchased "for resale"; and that assessment of the use tax violates the commerce clause of the United States Constitution. The taxpayer also contends that, even if the tax was properly assessed, interest on the tax was improperly computed; and that it had reasonable cause to fail to file a proper return or to pay the tax, and therefore penalties were improperly assessed. We conclude that the abatement was properly denied but that the Commissioner of Revenue (commissioner) improperly computed the amount of interest for which the taxpayer was liable, and we remand for recomputation of interest. Further, we remand for findings and rulings whether the taxpayer had reasonable cause to fail to file a return.

The board found the following facts. The taxpayer was incorporated in New Hampshire on July 14, 1982, for the purpose of buying, selling, leasing, and managing yachts for charter voyages. On or about July 13, 1982, the taxpayer purchased a used yacht from a Missouri corporation through a Florida selling dealer, Spencer Boat Co., Inc. (Spencer). The bill of sale listed Boston, Massachusetts, as the documentation port. The sale and delivery of the yacht occurred at West Palm

Beach, Florida, and Spencer was engaged to overhaul and repair the yacht. Due to delays and excessive costs of repair, the taxpayer arranged to move the yacht to Fairhaven, Massachusetts, and have the repairs performed at a shipyard owned and operated by D.N. Kelly & Sons, Inc. (Kelly). On or about August 1, 1982, when the boat was to be removed to Massachusetts, the taxpayer obtained an exemption from payment of a Florida sales and use tax on the purchase of the yacht, since it was to be repaired or altered in Florida and removed from the State within ten days thereafter. The vessel arrived at Kelly's shipyard on or about August 20, 1982, and remained there for approximately three months while extensive repair, maintenance, and cosmetic work was performed on the yacht, both out of the water and at dockside. On the weekend before or after Labor Day, 1982, Clifford H. Tuttle, treasurer and a stockholder of the taxpayer who resides in Marion, Massachusetts, took the yacht on a trip. Tuttle also was the first to charter the yacht after final repairs were completed; the vessel was delivered to him in Nassau, the Bahamas, in December, 1982. From 1983 through 1985, the vessel was chartered for cruises in the Caribbean during the winter and in "New England waters," including Massachusetts waters, during the summer. At the end of the summer chartering season, Kelly performed maintenance work on the vessel before it sailed to the Caribbean for the winter. The taxpayer sold the yacht in January, 1986.

The taxpayer was notified on January 23, 1984, of the commissioner's intention to assess a deficiency in use tax for the period July, 1982, and was sent a notice of assessment of "Sales/Use Tax" on July 6, 1984, in the amount of $26,317.04, which included interest and penalties.[1] The taxpayer filed a business use tax return on August 17, 1984, reporting the purchase of the yacht. On the same date, the taxpayer filed an application for abatement, which was denied on February 22, 1985. The taxpayer filed a timely appeal with the board pursuant to G. L. c. 62C, § 39 (1986 ed.). After a hearing and the tax-

---

[1] The use tax was originally assessed on a purchase price of $311,365. The board granted a partial abatement in the amount of $68.25, because it found that the tax should have been assessed on a purchase price of $310,000.

payer's request for findings and rulings pursuant to G. L. c. 58A, § 13 (1986 ed.), and Rule 32 of the Rules of Practice and Procedure of the Appellate Tax Board (1988), the board issued a decision, findings, and a report upholding the commissioner's assessment of the tax. From this decision, the taxpayer appeals. A transcript of the hearing was requested and is part of the record of this appeal.

We do not disturb a decision of the board unless it is not supported by substantial evidence or is based on an error of law. See *Tenneco Inc.* v. *Commissioner of Revenue*, 401 Mass. 380, 383 (1988); *Towle* v. *Commissioner of Revenue*, 397 Mass. 599, 601 (1986), and cases cited. See also G. L. c. 58A, § 13. We consider the entire record in our review, *Tenneco Inc.*, *supra* at 384, and will only set aside the board's findings if " 'the evidence points to no felt or appreciable probability of the conclusion or points to an overwhelming probability of the contrary.' " *Id.*, quoting *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 466 (1981). The taxpayer has the burden of proving as a matter of law its right to an abatement of the tax. *Towle* v. *Commissioner of Revenue*, *supra* at 603.

1. *Statutory claims.* The board found that the tax was properly assessed on the yacht pursuant to G. L. c. 64I, which imposes a tax "upon the storage, use or other consumption in the commonwealth of tangible personal property purchased from any vendor for storage, use or consumption within the commonwealth." G. L. c. 64I, § 2. The use tax established by G. L. c. 64I, is designed to be complementary with the sales tax established by G. L. c. 64H, in order to reach all transactions, except those expressly exempted, "in which tangible personal property is sold inside or outside the Commonwealth for storage, use, or other consumption within the Commonwealth." *Boston Tow Boat Co.* v. *State Tax Comm'n*, 366 Mass. 474, 477 (1974). The use tax was designed to prevent the loss of sales tax revenue from out-of-State purchases. *Id.* at 476, citing *First Agricultural Nat'l Bank* v. *State Tax Comm'n*, 353 Mass. 172, 181 (1967), rev'd on other grounds, 392 U.S. 339 (1968). The taxpayer here claims its purchase of the yacht is exempt from the provisions of G. L. c. 64I, § 2,

because at the time of purchase there was no *intent* to purchase *for* storage, use or consumption within Massachusetts. In order to prevail, the taxpayer must overcome the statutory presumption created by G. L. c. 64I, § 8 (*f*), which provides that, when property is shipped or brought into the Commonwealth within six months after purchase, it shall be presumed that the property "was purchased from a retailer for storage, use or other consumption" within Massachusetts. A bare assertion by the taxpayer that at the time of purchase there was no such intent, is not sufficient to rebut the presumption which arose one month later when the vessel was brought to Kelly's shipyard. See *Towle* v. *Commissioner of Revenue, supra* at 605.

The taxpayer also contends that the presumption of G. L. c. 64I, § 8 (*f*), is inapplicable because the boat was not purchased "from a retailer." We note first of all that the vessel would be exempt from the use tax if its sale were exempt from the sales tax imposed by c. 64H, but that c. 64H, specifically provides that casual sales of boats by a vendor "not regularly engaged in the business of making sales at retail" are not exempt from the use tax imposed by c. 64I. G. L. c. 64H, § 6 (*c*). In addition, we are precluded by G. L. c. 58A, § 13, from considering any issue of law which does not appear to have been raised before the board. The record before us does not indicate that this issue was raised or addressed by the taxpayer, and the record is devoid of testimony concerning the business of the seller of the yacht to the taxpayer. The issue is therefore waived. See *Brown* v. *Assessors of Bedford*, 398 Mass. 1010 (1986); *Minchin* v. *Commissioner of Revenue*, 393 Mass. 1004, 1005 (1984).

The taxpayer argues that there was no "storage" of the vessel in Massachusetts, and that the only "use" of the vessel within the Commonwealth were the repairs performed to enable the yacht to be used in an interstate chartering business. Chapter 64I, § 1, defines "storage," as "*any* keeping or retention in the commonwealth for *any* purpose except sale in the regular course of business or subsequent use solely outside of the commonwealth" (emphasis added). The taxpayer did not meet its burden of demonstrating an entitlement to an exemption

because the yacht was purchased exclusively for resale in the regular course of business, see, e.g., c. 64I, § 8 (*d*); 830 Code Mass. Regs. § 64H.25.1(7) (1988), or for use solely outside the Commonwealth. The board found that Tuttle was the first to use the yacht (the weekend before or after Labor Day, 1982, and on its first charter in December, 1982), and also found that the yacht was used in Massachusetts waters for "about two to four weeks" each summer, in addition to being regularly serviced at Kelly's shipyard.[2] Nor did the taxpayer demonstrate that it was entitled to the exemption for sales of vessels "of fifty tons burden or over" when sold by the builders thereof. G. L. c. 64H, § 6 (*o*).[3] Although the board acknowledged the evidence, proffered by the taxpayer, that the yacht weighed fifty tons or more,[4] it made no findings regarding the yacht's tonnage. Since the bill of sale was accepted in evidence, listing the boat's weight at approximately forty-four tons, we cannot say that the board's failure to find that the yacht weighed fifty tons or more was in error. The taxpayer therefore neither rebutted the statutory presumption of G. L. c. 64I, § 8 (*f*), nor demonstrated the applicability of any exemption.

2. *Constitutional claims.* The taxpayer contends that the commissioner is prohibited from assessing a use tax on the vessel under G. L. c. 64H, § 6 (*a*), which exempts from Massachusetts sales tax any sale which, under the Constitution or laws of the United States, may not be taxed by a State. Since the yacht was to be used in an interstate and foreign

---

[2] Indeed, according to an itinerary provided by Tuttle to the Department of Revenue, in the summer of 1983, prior to notification of assessment of the use tax, the boat was in Massachusetts for over seven weeks for repairs and maintenance, and for almost six weeks for chartered cruises.

[3] In *Boston Tow Boat Co.* v. *State Tax Comm'n,* 366 Mass. 474, 479 (1974), we held unconstitutional that portion of G. L. c. 64H, § 6 (*o*), inserted by St. 1967, c. 757, § 1, which exempted boats "constructed in the commonwealth," as discriminating against interstate commerce. The taxpayer's argument that the repairs to the ship were so extensive as to result in the boat's being "constructed" in the Commonwealth are therefore inapposite. Even were it not found that the yacht purchased was a *used* boat, the taxpayer still would have to have purchased it from the builders.

[4] The board found that the "only evidence as to tonnage" was the testimony of the president of Kelly's shipyard, a finding contradicted by the bill of sale.

chartering business, the taxpayer argues, it may not permissibly be taxed without a violation of the Federal commerce clause. U.S. Const. art. I, § 8, cl. 3. The taxpayer contends that the vessel had no taxable situs within the Commonwealth and that there was no break in the continuity of transit demonstrating that the vessel came to rest in Massachusetts.

It is well established that interstate commerce does not enjoy an absolute "free trade" immunity from State taxation, *George S. Carrington Co.* v. *State Tax Comm'n*, 375 Mass. 549, 551 (1978), but that goods and activities may permissibly be taxed where there is a substantial nexus with the taxing State, the tax is fairly apportioned and does not discriminate against interstate commerce, and the tax is "fairly related" to the services provided by the Commonwealth. *Id.* at 552, citing *Complete Auto Transit, Inc.* v. *Brady*, 430 U.S. 274, 279 (1977). Regardless whether the taxpayer paid "storage fees" to Kelly, the boat was brought into the Commonwealth, and kept here for three months, shortly after its purchase. Its documentation port throughout the period of ownership by the taxpayer was Boston. The yacht's first two trips were made by Tuttle, a resident of Massachusetts, and its regular maintenance and repair were performed in a Massachusetts shipyard. In addition to repair time, the boat was in Massachusetts waters for "about two to four weeks" each summer. This is a sufficient nexus to justify assessment of the tax. See *Towle* v. *Commissioner of Revenue*, 397 Mass. 599, 606 (1986).

Nor is the tax discriminatory, since it applies alike to residents and nonresidents, *Towle*, *supra*, and protects against multiple taxation through a statutory exemption for sales on which a tax is owed and paid in another State. G. L. c. 64I, § 7. The tax therefore is fairly apportioned and does not unduly burden interstate business. See *George S. Carrington Co.*, *supra* at 553-554; *Towle*, *supra* at 606. The tax bears a reasonable relation to the services provided, services from which the taxpayer benefited while the boat was stored and used within the Commonwealth. *Id.* at 606-607. The taxpayer here seeks to use the commerce clause of the United States Constitution not as protection against multiple or discriminatory taxation,

but as an escape from any taxation at all. This the Constitution does not permit. See *Towle, supra* at 606; *National Geographic Soc'y* v. *California Bd. of Equalization,* 430 U.S. 551, 558, 560 (1977). We conclude that there is no constitutional impediment to the assessment of the use tax in these circumstances.

3. *Request for abatement of penalties.* The taxpayer asserts that it reasonably relied upon expert legal advice in failing to file a return, and that it therefore showed no wilful neglect, carelessness, or intentional failure which justifies the assessment of a penalty. See G. L. c. 62C, § 33 (*f*) (1986 ed.). The board made no findings or rulings regarding whether the taxpayer's reliance on professional advice was reasonable in the circumstances, or whether such reliance constituted "reasonable cause" for failure to file. *Id.* Moreover, it appears from the record that the assessed interest and penalties were computed from the date of purchase and not from the date the yacht was brought into the Commonwealth. See *Towle, supra* at 607.

Accordingly, we conclude that the tax was properly assessed on the boat and that the imposition of the use tax does not offend the Federal Constitution. We remand to the board for findings and rulings on the issue whether penalties properly were assessed and for recomputation of interest and penalties, if any, from the date the ship was brought into the Commonwealth.

*So ordered.*