## THE NEW YORK TIMES COMPANY *vs.* COMMISSIONER OF REVENUE.
## FEDERAL EXPRESS CORPORATION *vs.* COMMISSIONER OF REVENUE.

Suffolk. March 2, 1998. - May 7, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, & IRELAND, JJ.

*Taxation,* Excise, Commissioner of revenue. *Constitutional Law,* Taxation, Interstate commerce, Equal protection of laws. *Administrative Law,* Regulations, Proceedings before agency, Disqualification of hearing officer. *Due Process of Law,* Taxation.

The Appellate Tax Board correctly imposed excise taxes, pursuant to G. L. c. 64I, § 2, on corporate aircraft that were hangared and largely maintained within the Commonwealth and that were used for business within and without the Commonwealth, where the record did not compel the conclusion that, during the tax years in question, the Commissioner of Revenue had a policy of exempting all instrumentalities of interstate commerce, including aircraft, from excise taxation. [402-404]

The Appellate Tax Board correctly imposed excise taxes, pursuant to G. L. c. 64I, § 2, on corporate aircraft that were hangared and largely maintained within the Commonwealth and that were used for business within and without the Commonwealth, and the Commissioner of Revenue was not obligated to announce publicly his intent to assess taxes on such aircraft before assessing the tax where G. L. c. 64I, § 2, contained no such requirement. [404-405]

Corporate taxpayers did not demonstrate that the assessment of excise taxes pursuant to G. L. c. 64I, § 2, on corporate aircraft singled out their aircraft in a manner different from other similarly situated entities in violation of Federal and State equal protection guarantees. [406-407]

There was no merit to a taxpayer's claim that a member of the Appellate Tax Board, hearing its challenge to the imposition of a tax, was not impartial, in violation of the taxpayer's due process rights. [407-409]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court granted an application for direct appellate review.

*William E. Halmkin (Arthur A. Hundhausen* with him) for The New York Times Company.

*Harold J. Carroll* for Federal Express Corporation.

*Edward J. DeAngelo*, Assistant Attorney General, for Commissioner of Revenue.

FRIED, J. The taxpayers, The New York Times Company (Times) and Federal Express Corporation (FedEx), appeal from the decisions of the Appellate Tax Board (board) upholding the Commissioner of Revenue's (commissioner's) imposition of excise tax on the Times and FedEx for use of their aircraft in the Commonwealth. The Times argues that the imposition constitutes an unlawful exception to the long-standing, consistent, and binding policy of the commissioner to exempt all instrumentalities of interstate commerce from the Massachusetts use tax. FedEx does not claim that there was any such long-standing and consistent policy, but argues that there should have been a publicly declared policy allowing such taxation before its aircraft were taxed. Both also argue that imposition of the tax constitutes a violation of the equal protection guarantees of the Fourteenth Amendment to the United States Constitution and art. 10 of the Massachusetts Declaration of Rights. Finally, the Times argues that the participation in the board's decision of a particular commissioner, who was formerly an attorney for the commissioner and had argued a similar case before he became a commissioner, violated its due process rights under the Fourteenth Amendment and art. 29 of the Massachusetts Declaration of Rights. We granted the taxpayers' applications for direct appellate review, and now affirm.

## I

The Times caused one of its subsidiaries, NYT 1896T, Inc., to purchase two jet planes and lease them to the Times. These planes were used in transporting its employees around the country. Under letter agreements amending a preexisting flight management agreement between the Times and A.F.M. Corporation (AFM) of Westfield, Massachusetts, AFM undertook to operate and maintain the two aircraft for the Times's purposes only. All costs of operating and maintaining the aircraft were passed on to the Times.

Both Times aircraft first entered the Commonwealth without passengers or cargo. When not engaged in travel, both aircraft were hangared at Barnes Airport in Westfield. Repairs and maintenance were performed largely within Massachusetts, and an inventory of spare parts exclusively for the two aircraft was kept at Barnes Airport.

After an investigation at the Barnes Airport, the Department of Revenue (department) gave notice of its intention to impose use taxes on the Times, pursuant to G. L. c. 64I, § 2,[1] for its use of the two aircraft for the periods from 1984 to 1990. After unsuccessfully challenging the notice of intention to assess in the department's appeal and review bureau in 1992, the Times paid the use tax. The Times then made applications for abatement of taxes for the same periods, which the commissioner denied. The Times then appealed to the board. The board upheld the commissioner's decision.

FedEx acquired four "feeder" aircraft for the purpose of transporting relatively small amounts of cargo between remote areas and its hubs in the northeastern States. FedEx entered into a flight management agreement with Wiggins Airways (Wiggins) of Norwood, under which Wiggins leased the aircraft from FedEx at a nominal fee and passed all costs of operating and maintaining the aircraft to FedEx.

All four FedEx aircraft first entered the Commonwealth without passengers or cargo. They were operated to a great extent within Massachusetts. When not engaged in travel, all four aircraft were often hangared at Wiggins's Norwood base. Maintenance of the aircraft was done largely within Massachusetts. FedEx's feeder aircraft frequently flew in and out of Logan Airport, and apartments for its pilots were maintained in East Boston.

An audit of FedEx's books and records for periods from 1985 to 1988 led to the issuance of a notice of intention to assess. After unsuccessfully challenging the notice in the Department's appeal and review bureau, FedEx paid the use tax. FedEx thereafter applied for abatement of taxes for the same periods. The commissioner denied abatement. FedEx then appealed to the board. Relying on its Times decision, the board upheld the commissioner's decision.

---

[1]The relevant portion of G. L. c. 64I, § 2, states:

"Except as otherwise provided in this chapter an excise is hereby imposed upon the storage, use or other consumption in the commonwealth of tangible personal property or services purchased from any vendor for storage, use or other consumption within the commonwealth at the rate of five percent of the sales price of the property or services."

## II

Neither taxpayer argues that the commissioner's imposition of taxes in the instant cases violates G. L. c. 64I, § 2, or the commerce clause as interpreted by the Supreme Court in *Complete Auto Transit, Inc.* v. *Brady,* 430 U.S. 274 (1977), and its progeny. In *Complete Auto,* the Court rejected the rule of *Spector Motor Serv., Inc.* v. *O'Connor,* 340 U.S. 602 (1951), that a State tax on the "privilege of doing business" is per se unconstitutional when it is applied to interstate commerce. *Complete Auto Transit, Inc.* v. *Brady, supra* at 288-289. In rejecting that rule, the *Complete Auto* Court validated State taxation of an interstate business activity so long as it is "[1] applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State." *Id.* at 279. See *George S. Carrington Co.* v. *State Tax Comm'n,* 375 Mass. 549, 551-552 (1978) (*Complete Auto* governs Massachusetts tax commission's ability to tax interstate commerce).

The Times argues, however, that, at the time the commissioner subjected its aircraft to taxation, he had not yet adopted the *Complete Auto* theory, but still adhered to the *Spector Motor* theory. Administrative agencies must generally abide by their own "internally promulgated policies" as evidenced by "regulation, guideline, instruction sheet, or other informal agency action of general application." *Commissioner of Revenue* v. *BayBank Middlesex,* 421 Mass. 736, 739, 741 (1996). See *Gillette Co.* v. *Commissioner of Revenue,* 425 Mass. 670, 678 (1997) ("We held [in *BayBank Middlesex*] that the commissioner could not retroactively assess back taxes and interest where the Department of Revenue had stated a clear policy on the issue that had remained unchanged and on which the taxpayers relied"). The Times[2] claims that assessment of taxes against its aircraft constitutes the only exception to the commissioner's consistent, long-standing, and binding practice of exempting all instrumentalities of interstate commerce, including aircraft, from the Massachusetts use tax.

---

[2]FedEx also seems to make this argument at many points in its brief. During oral argument, however, counsel for FedEx informed us that FedEx concedes that there was no long-standing and consistent policy of the commissioner prior to taxation of its aircraft, but argues that, for taxation of its aircraft to be valid, there should have been a publicly declared policy allowing such taxation.

The board, in upholding the taxation of the Times's aircraft, found:

> "[T]here was no single settled Departmental practice governing taxation of all aircraft arguably involved in interstate commerce adhered to over the entire 1980-1991 time period. . . . A variety of opinions existed [within the department] on the taxability of interstate aircraft . . . . However, no intra-Departmental consensus had been reached. There were no authoritative pronouncements on the question from the Commissioner."

In considering whether the evidence in a case is sufficient to support the board's conclusion, our review is limited to asking "whether a contrary conclusion is not merely a possible but a necessary inference from the findings." *First Data Corp.* v. *State Tax Comm'n*, 371 Mass. 444, 446 (1976). In addition, a clear indication of the existence of a policy is necessary for that policy to be binding on the commissioner. See *Gillette Co.* v. *Commissioner of Revenue, supra* at 678; *Commissioner of Revenue* v. *BayBank Middlesex, supra* at 741; *General Elec. Co.* v. *Commissioner of Revenue*, 402 Mass. 523, 532 (1988). The evidence that the Times offered does not compel the conclusion that the commissioner had a policy of exempting all instrumentalities of interstate commerce, including aircraft, from the Massachusetts use tax.

The Times argues that the commissioner's consistent and long-standing practice of exempting all instrumentalities of interstate commerce, including aircraft, from the Massachusetts use tax was evidenced by 830 Code Mass. Regs. § 64H.25.1(7)(g).[3] The Times further argues that the commissioner's continued adherence to the old *Spector Motor* rule is evidenced by internal legal memoranda, the fact that the com-

---

[3] The relevant portion of 830 Code Mass. Regs. § 64H.25.1(7)(g) stated:

"The sale or use of a motor vehicle, trailer, or other vehicle for use in interstate commerce is exempt from the sales and use tax as follows:

"1. Requirements for exemption:

"a. the purchaser must be authorized by the ICC as an interstate carrier under a designated Docket Number or Certificate;

"b. the purchaser must take delivery of and title to the vehicle outside of Massachusetts; and

missioner did not tax any use of aircraft after studies in 1980 and 1988-1989 into the feasibility of taxing use of aircraft, and the testimony of various former and present employees of the department.

Section 64H.25.1(7)(g) deals with motor vehicles, not aircraft. Although one internal memorandum dated 1987 recommends applying "the principles and most of the evidentiary requirements" of § 64H.25.1(7)(g) to aircraft, a memorandum dated 1988 points out that the provision must be amended before it may be applied to aircraft.[4] And the commissioner's decision not to tax any aircraft after the two feasibility studies in the 1980's may be explained by the fact that, at the time, the department auditors had failed to locate any aircraft that met all four *Complete Auto* criteria. As the board found, testimony of the present and former employees of the department was often conflicting, and certainly did not clearly indicate that the commissioner adhered to any one policy in his decisions whether to assess taxes against instrumentalities of interstate commerce. In sum, no inference is required from the record that the commissioner, at the time of assessing taxes against the Times's aircraft, had adhered to a consistent and long-standing practice of exempting all instrumentalities of interstate commerce, including aircraft, from the Massachusetts use tax.

## III

FedEx makes an alternative argument. While conceding that the commissioner did not have any long-standing and consistent policy of exempting all instrumentalities of interstate commerce, including aircraft, from Massachusetts use tax, FedEx argues that the commissioner was obligated to announce publicly his intent to assess taxes against aircraft before taxing

---

"c. the vehicle must enter Massachusetts for the first time with passengers or freight in interstate commerce."

[4]Strict application of § 64H.25.1(7)(g) to the aircraft involved in these cases would not help the Times. The regulation exempts from taxation motor vehicles only if certified by the Interstate Commerce Commission (ICC). The ICC never had jurisdiction over aircraft. The regulation also specifically requires that the motor vehicles qualifying for tax exemption enter the Commonwealth with passengers or freight. The Times aircraft first entered the Commonwealth empty.

FedEx's aircraft. In *Polaroid Corp.* v. *Commissioner of Revenue,* 393 Mass. 490 (1984), we decided that the commissioner may not lawfully redetermine the Massachusetts taxable income of a corporation and its subsidiaries for certain tax periods on the basis of the "unitary business" approach, without first adopting appropriate regulations. *Id.* at 495. We further added:

> "Corporate affiliates should have advance notice of their rights and obligations under a unitary approach. The retroactive imposition of new tax 'rules' on a selective basis can be unfair to taxpayers."

*Id.* at 496. FedEx quotes this language in arguing that it should have received advance notice in the form of regulations before it was assessed tax on its use of feeder aircraft. But G. L. c. 63, § 39A, which allows the commissioner to use the "unitary business" approach, explicitly requires the commissioner to exercise this authority only pursuant to "reasonable rules of apportionment." The *Polaroid* court considered it significant that no such rules had been promulgated. *Polaroid Corp.* v. *Commissioner of Revenue, supra* at 492. General Laws c. 64I, § 2, contains no such requirement. The *Polaroid* decision is inapposite here.

Also inapposite is *Commissioner of Revenue* v. *BayBank Middlesex,* 421 Mass. 736 (1996). In that case, we held that the commissioner cannot change the department's policy regarding bank excise tax treatment of premiums paid for bonds that are exempt from Federal income tax, without promulgating regulations or otherwise issuing a public statement of a change of policy, when the commissioner had earlier issued an instruction sheet regarding the same issue that banks had followed for over forty years. *Id.* at 740-742. The existence of an instruction sheet that invited reliance was crucial to the *BayBank Middlesex* decision. *Id.* at 741 ("[T]he 1945 Instruction Sheet . . . was far more than a mere letter on agency stationery; forms are specifically authorized by the General Laws . . . and regulations provide for instructions" [citation omitted]). FedEx cannot invoke that decision here because, as concluded in the preceding section, the commissioner did not have any clear policy exempting use of aircraft from Massachusetts use tax on which FedEx could have relied.

## IV

The taxpayers also argue that assessment of use taxes against their aircraft violated the equal protection guarantees of the Fourteenth Amendment and art. 10. They claim that the commissioner intentionally singled out their aircraft for use taxation, and thus intentionally treated them differently from other similarly situated entities.

With respect to the Times's equal protection argument, the board stated:

> "[T]he Board's conclusion that there was no binding Departmental policy exempting instrumentalities of interstate commerce from sales or use taxation, undermines the premise of [the Times's] Equal Protection theory. Without the policy claimed to be inconsistent with the disputed assessment, [the Times] cannot show the specific inequality it alleges."

Discrimination necessary to make out a violation of the equal protection clause need not, however, be premised solely on an explicit policy. As *Yick Wo* v. *Hopkins*, 118 U.S. 356, 373 (1886), and its progeny show, discriminatory intent may be gathered from evidence regarding the actual administration of a facially neutral law. The taxpayers argue that the conclusion that the commissioner violated the equal protection clause is inescapable given the exceptional nature of taxation of their aircraft.

The board ruled that the Times's aircraft and other instrumentalities of interstate transportation such as motor vehicles are not similarly situated. The Supreme Court has long been deferential to the Legislature when a nonsuspect classification is involved, and has required only a "rational" connection between legislative means and legislative ends. See, e.g., *Railway Express Agency* v. *New York*, 336 U.S. 106 (1949). Likewise, in *Seiler Corp.* v. *Commissioner of Revenue*, 384 Mass. 635, 639 (1981), this court stated:

> "So long as any basis of fact can be reasonably conceived showing that the distinction made by a tax statute has a fair and rational relationship to the object sought to be accomplished, the legislative classification is not violative of equal protection principles."

In rejecting the Times's argument, the board reasoned that the commissioner could very well have concluded that surface vehicles certified by the Interstate Commerce Commission that first entered the Commonwealth carrying passengers or cargo, taxation of which is governed by § 64H.25.1(7)(g), are less likely to leave the stream of interstate commerce or less likely to establish a sufficient nexus with the Commonwealth than the Times's aircraft.

The same reasoning applies to the taxpayers' argument that the commissioner's disparate tax treatment of their aircraft vis-à-vis commercial aircraft owned by airlines violates the equal protection clause. The commissioner could very well have concluded that there are significant differences between aircraft that fly in and out of Logan Airport and aircraft hangared and maintained in Westfield or Norwood. The taxpayers had the burden to show the facts entitling them to relief in these cases. See *Freeman* v. *Pitts*, 503 U.S. 467, 503 (1992) (Scalia, J., concurring); *Rushworth* v. *Registrar of Motor Vehicles*, 413 Mass. 265, 271 (1992). They failed to adduce any evidence showing that other aircraft relevantly similar to their own aircraft existed. On the other hand, there was testimony that indicated that, throughout the 1980's, the commissioner was looking for, but failed to locate, suitable aircraft to tax. The taxpayers cannot insist on the mere fact that assessment of use taxes for their use of aircraft was exceptional, unless they show that the assessments are exceptional relative to other similarly situated entities.[5]

## V

Before he was appointed to the board as a commissioner in 1997, Donald Gorton was an attorney for the commissioner. In that capacity, Gorton briefed and argued Boston Towing & Transp. Co. *vs.* Commissioner of Revenue, A.T.B. No. 169622 (1995). That case involved two taxpayers' equal protection argument that tax assessments against their tug boats constituted

---

[5]Furthermore, the commissioner may very well decide in the near future to tax commercial aircraft that are relevantly similar to the taxpayers' aircraft, should such commercial aircraft exist. Therefore, even assuming arguendo that the taxpayers' aircraft and aircraft owned by airlines are similarly situated, the commissioner's taxation of the former could be justified under the "one step at a time" logic of *Williams* v. *Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955).

unlawful disparate treatment because no similar assessments were imposed against aircraft providing interstate service at Logan Airport and container ships and oil tankers calling at the port of Boston. Boston Towing raised some of the legal and factual questions raised in the present cases and involved some of the same witnesses testifying as to the commissioner's policies and practices. The Times argues that, because of this prior involvement, Commissioner Gorton could not have been an impartial adjudicator in the Times case, and that his participation in the board's decision violated the Times's due process rights under the Fourteenth Amendment and art. 29.

This argument is without merit. The board rejected it, stating:

> "[The Times's] claim of 'unintentional bias' is erroneously premised on the proposition that a commissioner, or for that matter an administrative law judge or a justice of any trial or appellate court, is not capable of participating in the decision of a matter involving an issue similar to one he or she may have previously addressed in an advocate/attorney capacity without being biased as a result thereof. The Board has promulgated a 49 page Findings of Fact and Report in this appeal which details the findings of fact, legal analysis, and conclusions of the Board in this appeal. The Board affirms the findings, analysis, and conclusions contained in the Findings of Fact and Report as the most appropriate response to the Appellant's unsupported assertions."

The Times's position is equivalent to the position of a litigant who challenges a judge's impartiality because of the judge's actions before he became a judge. There are cases holding that, where a judge was previously employed or consulted as an attorney, or was associated with an attorney who was consulted or employed, in a matter arising out of the same underlying factual circumstances and involving the same parties as a present case, the judge must recuse himself. See, e.g., *Preston* v. *United States*, 923 F.2d 731, 733-734 (9th Cir. 1991); *Rollo* v. *Dison*, 402 So. 2d 122, 128 (La. App. 1981). But see *Lofton* v. *State*, 57 Ark. App. 226, 231-232 (1997) (fact that judge's term as elected prosecutor coincided with the pendency of investigation does not automatically require his recusal in a case arising from that investigation). But if a judge's prejudicial involvement was on a matter arising out of different factual circum-

stances and involving different parties, he is not disqualified. See *Leaman* v. *Ohio Dep't of Mental Retardation & Dev. Disabilities*, 825 F.2d 946, 949-950 (6th Cir. 1987), cert. denied, 487 U.S. 1204 (1988) (fact that judge was a legislator in Ohio Legislature when statute involved in instant case was enacted does not automatically disqualify him). Cf. *McBeth* v. *Nissan Motor Corp. U.S.A.*, 921 F. Supp. 1473 (D.S.C. 1996) (judge's humorous remarks at automobile torts seminar two years earlier about negative attributes of defense lawyers did not provide basis for his recusal from instant automobile products liability case, even assuming he intended them seriously, absent an actual showing of bias against manufacturer). The Boston Towing case and the Times case are different matters, arising out of different factual circumstances and involving different taxpayers. A lawyer for an agency who later assumes adjudicatory functions that relate to that agency's work will inevitably face matters involving issues similar to those he dealt with as a lawyer. A prosecutor or a defense attorney who becomes a judge will also often find himself in such a situation. A recusal is required only if a matter arising out of the same factual circumstances and involving the same parties later comes before the judge or an adjudicator.

The Times opinion was signed by Commissioner Abigail Burns, not Commissoner Gorton. The Times points to certain commonalities between the board's opinion in the Times case and Gorton's posttrial memorandum in Boston Towing, and asserts that these are indications of Commissioner Gorton's bias infecting the board's decision. In particular, the Times refers to the same authorities cited and the same reluctance to treat a particular witness's testimony as credible. But given that the two cases involved some similar factual and legal questions, it is not surprising that some of the same cases are cited and that the same particular witness's testimony was considered unreliable.

The board's decisions upholding the commissioner's imposition of excise taxes on the taxpayers for their use of aircraft in the Commonwealth are affirmed.

*So ordered.*