## BOSTON TOWING AND TRANSPORTATION CO. *vs.* COMMISSIONER OF REVENUE (and a companion case[1]).

No. 98-P-1297.

Suffolk. January 7, 2000. - October 12, 2001.

Present: GREENBERG, KAPLAN, & RAPOZA, JJ.

*Taxation,* Excise, Sales and use tax, Sales tax: exemption. *Constitutional Law,* Taxation, Equal protection of laws, Commerce clause. *Words,* "Boat."

Taxpayers who had purchased boats for use in their businesses conducted in Massachusetts coastal waters were not entitled to exemptions from the complementary sales and use taxes for "casual and isolated sales" set forth in G. L. c. 64H, § 6(*c*), and G. L. c. 64I, § 7(*b*), where, although the purchases of the boats at issue were found by the Commissioner of Revenue to be "casual and isolated sales" for the purpose of the sales tax exemption, c. 64H, § 6(*c*), also preserved the taxability of such sales, including sales of boats, under the use tax statute, and where nothing in either statute supported the taxpayers' assertion that the Legislature intended to exclude commercial vehicles. [805-807]

The Commissioner of Revenue properly assessed a use tax on boats purchased in Massachusetts for use in businesses conducted by taxpayers in Massachusetts coastal waters, where the purchase of the boats was followed by their use in Massachusetts, and where, although the sales were found to be "casual and isolated sales" for purposes of the sales tax exemption of G. L. c. 64H, § 6(*c*), under the provisos to the exemption, casual and isolated sales of boats were not exempt from the use tax. [807-808]

The equal protection provisions of the Federal and State Constitutions did not prohibit the imposition of the Massachusetts use tax, pursuant to G. L. c. 64I, on boats purchased by taxpayers for use in their businesses because a greater tax burden would be imposed on their boats than would be imposed on motor vehicles, where the taxpayers made no showing that the Commissioner of Revenue's assessments were exceptional relative to other similarly situated entities. [808-809]

The commerce clause of the United States Constitution did not prohibit the imposition of the Massachusetts use tax, pursuant to G. L. c. 64I, on boats purchased by the taxpayers for use in their businesses. [809-810]

APPEAL from decisions of the Appellate Tax Board.

*William E. Halmkin* for the plaintiffs.

---

[1]Crosby Tow Boat, Inc. *vs.* Commissioner of Revenue.

*Edward J. DeAngelo*, Assistant Attorney General, for Commissioner of Revenue.

RAPOZA, J. The taxpayers, Boston Towing and Transportation Co. (Boston Towing) and Crosby Tow Boat, Inc. (Crosby), appeal from decisions of the Appellate Tax Board (board) upholding the Commissioner of Revenue's (commissioner's) imposition of excise taxes for use of their boats in the Commonwealth. The taxpayers argue that their boats come within the exemption from sales and use tax for "casual and isolated sales" set forth in G. L. c. 64H, § 6(*c*), and G. L. c. 64I, § 7(*b*); that the use tax was not applicable to those boats that were purchased in Massachusetts; and that imposition of the tax violates the equal protection clause of the Federal and State Constitutions and the commerce clause of the Federal Constitution. We affirm.

1. *Facts.* Boston Towing, a Massachusetts corporation with its principal place of business in East Boston, tows tankers, barges, and other seagoing vessels engaged in interstate commerce. In 1984 and 1985, Boston Towing purchased a barge in New Jersey and a tugboat in Virginia. Both boats entered Massachusetts coastal waters within two months of their purchase.[2] Five other tugboats were purchased in Boston. All seven boats were based at Boston Towing's East Boston facility and spent a portion of their time in Massachusetts coastal waters.

After conducting a tax audit, the Department of Revenue (department) issued a notice of intent to assess a "sales/use" tax on Boston Towing for its use of all these vessels and for purchases of supplies and fuel made between April, 1984, and

---

[2]Both the location of a purchase and when a boat purchased out-of-State first enters Massachusetts waters are relevant to the assessment of sales and use taxes. A sales tax may be assessed only upon sales that take place within the Commonwealth, G. L. c. 64H, § 2, but a use tax may be assessed on the use of property purchased from "any vendor," whether inside or outside the Commonwealth. G. L. c. 64I, § 2. See *Boston Tow Boat Co.* v. *State Tax Commn.*, 366 Mass. 474, 476-477 (1974).

There is a "statutory presumption created by G. L. c. 64I, § 8(*f*), which provides that, when property is shipped or brought into the Commonwealth within six months after purchase, it shall be presumed that the property 'was purchased . . . for storage, use or other consumption' within Massachusetts" and therefore is subject to the use tax. *M & T Charters, Inc.* v. *Commissioner of Rev.*, 404 Mass. 137, 141 (1989).

March, 1987. Boston Towing unsuccessfully challenged the notice of intent to assess in the department's appeal and review bureau, paid the assessed tax, and filed an application for abatement. The commissioner granted the application for abatement of assessed late penalties and denied the remainder of the application. Boston Towing appealed to the board in December, 1992.

Crosby, a Massachusetts corporation with a principal place of business in Barnstable, assists barges through the Cape Cod Canal and does miscellaneous offshore salvage and towing work. Crosby purchased seven tugboats for its business in the fall of 1985 and spring of 1986. Two were purchased in New York and entered Massachusetts coastal waters within six months of their purchase. The other five were purchased in Massachusetts. Crosby has used all these vessels for shipdocking and towing operations in Massachusetts coastal waters since the date of their purchase.

Following a tax audit, the department issued a notice of intent to assess a "sales/use" tax on Crosby for the purchase of these vessels, fuel, and supplies. After challenging the notice of intent to assess in the department's appeal and review bureau, Crosby was assessed tax for the purchase of the vessels, but not for the fuel and supplies used in interstate commerce. Crosby paid the tax and applied for abatements, which were denied. Crosby appealed to the board on July 17, 1989. The board consolidated Boston Towing's and Crosby's appeals, and upheld the commissioner's decisions.

"We do not disturb a decision of the board unless it is not supported by substantial evidence or is based on an error of law. . . . The taxpayer has the burden of proving as a matter of law its right to an abatement of the tax." *M & T Charters, Inc.* v. *Commissioner of Rev.*, 404 Mass. 137, 140 (1989).

2. *Statutory claims.*

a. *The "casual sale" exemption.* The taxpayers argue that, contrary to the ruling of the board, they are entitled to the exemptions from the complementary sales and use taxes set forth in G. L. c. 64H, § 6(*c*), and G. L. c. 64I, § 7(*b*), respectively. The first statute exempts casual and isolated sales from the sales tax, but includes a proviso preserving the taxabil-

ity of such sales of certain motor vehicles or trailers, boats and airplanes under the use tax statute.[3] The use tax exemption, in turn, reiterates the proviso of the sales tax exemption as to motor vehicles, trailers, boats and airplanes, and applies the use tax to those purchases unless the buyer is closely related to the seller.[4] The commissioner found that the purchases of the boats at issue here were casual and isolated sales for the purpose of the sales tax exemption, but that the use tax was applicable.

The taxpayers argue that neither the sales nor use tax is applicable to their vessels because they are not "boats" within the meaning of the statutes. They contend that the Legislature intended the statutory term "boat" to refer only to noncommercial vessels. They rest their argument primarily on the absence of a definition of the word "boat" in the General Laws, and the fact that the terms "vessel" and "ship" are used in various statutes to refer to commercial watercraft. The board rejected this contention.

Absent a statutory definition of a term, "we first look to the usual and accepted meaning of that word. We derive such meaning 'from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions.' " *Commonwealth* v. *Davie*, 46 Mass. App. Ct. 25, 28 (1998), quoting from *Commonwealth* v. *Zone Book, Inc.*, 372 Mass. 366, 369 (1977).

Two relevant definitions of "boat" appeared in Webster's

---

[3] General Laws c. 64H, § 6(c), as amended by St. 1970, c. 566, § 7, provides an exemption from the sales tax for "[c]asual and isolated sales by a vendor who is not regularly engaged in the business of making sales at retail; provided, however, that *nothing contained in this paragraph shall be construed to exempt any such sale of a motor vehicle or trailer, as defined in section one of chapter ninety, or any such sale of a boat or airplane from the tax imposed under chapter sixty-four I*" (emphasis supplied).

[4] General Laws c. 64I, § 7(b), as amended by St. 1969, c. 558, § 3, exempts from the use tax: "[s]ales exempt from the taxes imposed under chapter sixty-four H; *provided, however, that in the case of the purchase of any motor vehicle or trailer, as defined in section one of chapter ninety, or any boat or airplane, other than from a vendor who is regularly engaged in the business of making sales at retail of such motor vehicles, trailers, boats or airplanes, the receipts from which are exempt from the tax imposed under said chapter sixty-four H, the purchaser thereof, except when said purchaser is the spouse, mother, father, brother, sister or child of the seller, shall pay the tax imposed by this chapter*" (emphasis supplied).

Third Intl. Dictionary (1961): (1) "a small vessel with or without a deck propelled by oars or paddles or by sail or power"; and (2) "ship." Neither definition limits the term "boat" to noncommercial vessels.[5] Further, the term "boat" appears in the General Laws referring specifically to commercial watercraft[6] and to watercraft collectively.[7]

Nothing in the provisos in G. L. c. 64H, § 6(*c*), or c. 64I, § 7(*b*), supports the taxpayers' assertion that the Legislature intended to exclude commercial vehicles. By their terms the statutes apply to broad categories of vehicles: motor vehicles and trailers as defined in G. L. c. 90, and boats and airplanes. The definitions of "motor vehicles" and "trailer" in G. L. c. 90, § 1, include both commercial and noncommercial vehicles; the term "airplane" indicates no intent to distinguish between commercial and noncommercial aircraft. Moreover, the words "boat" and "airplane" are preceded by the adjective "any" in the proviso appearing in the use tax statute, see note 4, *supra*, indicating that each of those terms applies to an entire class of vehicles.

We agree with the board that the statute does not distinguish between commercial and noncommercial watercraft and that the taxpayers have not demonstrated "that for purposes of this exemption the Legislature intended to make such a distinction and neglected to say so."

b. *Assessment of use tax for boats purchased in Massachusetts.* The taxpayers contend that, with regard to the

---

[5]As the taxpayers point out, the fourth edition of Black's Law Dictionary (1951) defined "boat" as "a small open vessel, or water craft, usually moved by oars or rowing." The commentary added that "[i]t is commonly distinguished in law from a ship or vessel, by being of smaller size and without a deck," but that the term "boat" is often used synonymously with "vessel" and that the words "boats and rafts" have been held to be "broad enough to cover all water craft, not merely small rowboats." The term "boat" does not appear in the seventh edition of Black's Law Dictionary (1999).

[6]See, e.g., G. L. c. 59, § 5, clause Twentieth (boats used for commercial fishing); G. L. c. 88, § 9 ("boat laden with goods, wares or merchandise"); G. L. c. 91, §§ 52, 54 (tow boats); G. L. c. 140, § 191 (passenger carriers).

[7]See, e.g., G. L. c. 21J, § 1, third par., as amended by St. 1996, c. 450, § 47 (facility from which "petroleum products are dispensed . . . to a motor vehicle or boat as motor fuel"); G. L. c. 60B, § 2(*h*) ("boat" used synonymously with the generic term "vessel").

boats purchased in Massachusetts, the commissioner improperly imposed a use tax rather than a sales tax. This contention has no merit.

The use tax is applicable to the boats purchased in Massachusetts because their purchase was followed by their use in Massachusetts. The use tax is "an excise . . . imposed upon the storage, use or other consumption in the commonwealth of tangible personal property or services purchased from *any vendor* for storage, use or other consumption within the commonwealth" (emphasis added). G. L. c. 64I, § 2, as amended by St. 1990, c. 121, § 58. As discussed in section (a) above, the boat sales were found to be casual and isolated sales for purposes of the sales tax exemption. However, under the provisos to the exemptions, casual and isolated sales of boats are not exempt from the use tax. "[T]he sales and use excises are complementary components of a unitary taxing program created to reach all transactions (unless specifically exempted by G. L. c. 64H, § 6, or G. L. c. 64I, § 7) in which tangible personal property is sold inside or outside the Commonwealth for storage, use, or other consumption within the Commonwealth." *Boston Tow Boat Co.* v. *State Tax Commn.,* 366 Mass. 474, 476-477 (1974). There was no error.

3. *Constitutional claims.*

a. *Equal protection.* The taxpayers argue that the assessment of the tax on their boats violates the equal protection provisions of both the Federal and State Constitutions[8] because a greater tax burden is imposed on their boats than is imposed on motor vehicles.[9] Like the taxpayers' now abandoned contention that the commissioner had a policy of exempting instrumentalities of interstate commerce from sales and use taxes during the period

---

[8] We apply the same standard of review under the State Constitution and the Constitution of the United States. *Seiler Corp.* v. *Commissioner of Rev.,* 384 Mass. 635, 639 (1981).

[9] A department regulation sets forth criteria for exempting certain motor vehicles from sales and use taxation. See 830 Code Mass. Regs. § 64H.02(7)(g) (1986) for the relevant period; renumbered as § 64H.25.1(7)(g) in 1988; and substantively amended in 1996.

at issue,[10] this argument has been put to rest by the decision in *New York Times Co.* v. *Commissioner of Rev.*, 427 Mass. 399 (1998). In *New York Times Co.*, the commissioner had imposed use taxes on the Times and Federal Express Corporation for the use of their aircraft in the Commonwealth. *Id.* at 400. The taxpayers argued that the commissioner had violated their equal protection rights by singling out and treating their aircraft differently from other similarly situated entities, such as motor vehicles and aircraft owned by airlines. The court pointed out that since a nonsuspect classification was involved, "[s]o long as any basis of fact can be reasonably conceived showing that the distinction made by a tax statute has a fair and rational relationship to the object sought to be accomplished, the legislative classification is not violative of equal protection principles." *Id.* at 406, quoting from *Seiler Corp.* v. *Commissioner of Rev.*, 384 Mass. 635, 639 (1981). The burden was on the taxpayers to "show the facts entitling them to relief." *New York Times Co.*, *supra* at 407, and cases cited. The court agreed with the board that "the Times's aircraft and other instrumentalities of interstate transportation such as motor vehicles are not similarly situated," and that "[t]he commissioner could very well have concluded that there are significant differences between [the taxpayers' aircraft and other aircraft]." *Id.* at 406, 407.

As in *New York Times Co.*, the taxpayers in this case "cannot insist on the mere fact that assessment of use taxes for their use of [boats] was exceptional, unless they show that the assessments are exceptional relative to other similarly situated entities." *Id.* at 407. They have made no such showing.

b. *Commerce clause.* The taxpayers' argument that the assessment of a use tax on their boats violates the Federal commerce clause, U.S. Const. art. 1, § 8, cl. 3, similarly has no merit. They contend that the violation arises from the differential treat-

---

[10]The taxpayers argued before the board that the commissioner had a longstanding policy of exempting all instrumentalities of interstate commerce from sales and use taxes and that he was therefore required to extend the exemption to their boats. After the board's decision in this case, the Supreme Judicial Court issued a decision in *New York Times Co.* v. *Commissioner of Rev.*, 427 Mass. 399, 402-404 (1998), upholding a determination of the board that, during the period from 1980 to 1991, the commissioner had not maintained a policy of exempting vehicles engaged in interstate commerce from sales and use taxes.

ment of businesses that operate motor vehicles in interstate commerce and businesses operating other forms of transport in interstate commerce. The effect, they assert, is to create a disincentive for businesses other than trucking companies to locate their businesses in Massachusetts.

The commerce clause "denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Sys., Inc.* v. *Department of Envtl. Quality*, 511 U.S. 93, 98 (1994). "The term 'discrimination' as used in this context means 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.' " *Perini Corp.* v. *Commissioner of Rev.*, 419 Mass. 763, 767, cert. denied sub nom. *Adams* v. *Perini Corp.*, 516 U.S. 822 (1995), quoting from *Oregon Waste Sys., Inc.* v. *Department of Envtl. Quality*, *supra* at 99. The taxpayers do not assert discriminatory treatment between in-State and out-of-State entities; nor do they otherwise demonstrate that treating motor vehicle businesses differently from businesses operating other forms of transport involved in interstate commerce "unduly burden[s] interstate business." *M & T Charters, Inc.* v. *Commissioner of Rev.*, 404 Mass. at 143.

Moreover, the tax at issue here meets the test imposed in *M & T Charters, Inc.*, in which the court held that imposition of a use tax on a boat utilized in an out-of-State chartering business did not violate the commerce clause. *Id.* at 142-144. Contrast *Boston Tow Boat, Inc.* v. *State Tax Commn.*, 366 Mass. at 479 (exemption that imposed greater tax on vessels or barges manufactured outside the Commonwealth than on those manufactured inside the Commonwealth violated the commerce clause); *Perini Corp.* v. *Commissioner of Rev.*, 419 Mass. at 765-772 (corporate excise statute which, inter alia, treated domestic parent companies more favorably than foreign parent companies, facially discriminated against interstate commerce in violation of the commerce clause).

The board's decisions upholding the commissioner's imposition of excise taxes on the taxpayers for the use of their boats in the Commonwealth are affirmed.

*So ordered.*