TALBOTS, INC., a Delaware corporation, Plaintiff–Appellant,

v.

Patricia SCHWARTZBERG, Manager of Revenue for the City and County of Denver, State of Colorado; the Department of Revenue of the City and County of Denver, State of Colorado; and the City and County of Denver, a Municipal corporation, Defendants–Appellees.

No. 95CA1892.

Colorado Court of Appeals, Div. III.

Oct. 24, 1996.

Antonio Bates Bernard, P.C., Roy A. Adkins, Denver, Brann & Isaacson, Martin I. Eisenstein, Roy T. Pierce, Lewiston, Maine, for Plaintiff–Appellant.

Daniel E. Muse, City Attorney, Robert F. Strenski, Assistant City Attorney, Denver, for Defendants–Appellees.

Opinion by Judge ROTHENBERG.

Plaintiff, Talbots, Inc., appeals a district court judgment which affirmed an administrative decision permitting the City and County of Denver to assess a use tax on catalogs which Talbots distributed by mail to Denver addressees. We affirm.

The essential facts are undisputed. Talbots is a Delaware corporation with its principal place of business in Massachusetts. It contracts with a printer outside Denver to print its catalogs and to mail them to addressees all over the world. Talbots has two retail stores in Denver, and it sent approximately 5,000 catalogs to these stores and 30,000 catalogs to other Denver addressees.

In June 1993, Denver issued a Notice of Final Determination, Assessment and Demand for Payment (the assessment) of a use tax based on the catalogs. Talbots does not dispute the assessment of a use tax on the 5,000 catalogs sent to its two Denver stores. At issue here is the validity of the assessment on the approximately 30,000 catalogs sent to the other Denver addressees.

Following a hearing, the Denver Manager of Revenue, through her hearing officer, affirmed the assessment. Talbots then filed this action seeking judicial review. The district court upheld the assessment and affirmed.

## I.

Talbots first asserts that, because the assessment was on an activity occurring wholly outside the City and County of Denver, it violates Denver Revised Municipal Code § 53–96 which allows the levy of a use tax only on property stored, used, distributed or consumed "in the city." We are not persuaded.

## A.

In an appeal to the district court from an assessment of use taxes, review normally is *de novo* pursuant to § 29–2–206.1(7) (1986 Repl.Vol. 12A); *Walgreen Co. v. Charnes,* 819 P.2d 1039 (Colo.1991). However, here, the claims under § 29–2–206.1, C.R.S. (1986 Repl.Vol. 12A) were dismissed by the district

court as untimely and the only remaining claim was for relief pursuant to C.R.C.P. 106(a)(4).

In a C.R.C.P. 106(a)(4) proceeding, the district court cannot determine disputed questions of fact but must affirm if there is any competent evidence in the record to support the decision. *Dillon Companies, Inc. v. City of Boulder,* 183 Colo. 117, 515 P.2d 627 (1973).

In determining the existence of an abuse of discretion, a reviewing court also may consider whether the administrative agency misconstrued or misapplied the law and, in so doing, may address issues involving mixed questions of law and fact. *Van Sickle v. Boyes,* 797 P.2d 1267 (Colo.1990).

Here, the district court properly applied the deferential standard of review to the hearing officer's factual findings and, based upon those findings, it affirmed the hearing officer.

Talbots does not quarrel with the factual findings which are undisputed, but objects to the court's failure to determine the legal issues *de novo.* The record does not clearly reflect which standard of review the district court used with respect to the legal issues.

Nevertheless, we conclude *de novo* that the hearing officer properly interpreted the law and, thus, find no basis for reversal. *See Biel v. Alcott,* 876 P.2d 60 (Colo.App.1993) (although the trial court did not set forth analytical framework that led to its conclusion, decision will be affirmed if court reached the right result by incorrect reasoning or by not articulating its reasoning).

## B.

■ According to Talbots, before the mailing of promotional materials from outside Denver directly to Denver residents may be considered a taxable use, a company must engage in activities *in Denver* regarding the production, printing, or mailing of the promotional materials. Since all of the arrangements for the catalogs were made from its Massachusetts headquarters, Talbots claims that it exercised no dominion or control over the catalogs in Denver and, therefore, that

the use tax cannot lawfully be assessed. We disagree.

Denver Revised Municipal Code § 53–96 states that:

There is levied and there shall be collected and paid a tax in the amount stated in this article, by every person exercising the taxable privilege of storing, using, *distributing,* or consuming *in the city* ... any article of tangible personal property, purchased at retail, for said exercise of said privilege, as follows:

(1) On the purchase price paid or charged upon all sales and purchases of tangible personal property. (emphasis added)

"Use" means the exercise for any length of time of any right, power, or dominion over tangible personal property. Denver Revised Municipal Code § 53–95.

The use tax was intended to have a broad application. *See A.B. Hirschfeld Press, Inc. v. City and County of Denver,* 806 P.2d 917, 920 (Colo.1991) ("The Code reflects a broad legislative intent to impose sales taxes or use taxes upon the great majority of purchases of tangible personal property.").

An argument analogous to Talbots' was rejected in *Walgreen Co. v. Charnes,* 859 P.2d 235 (Colo.App.1992). Walgreen operated outside Colorado, purchased advertising from printers outside Denver, and then contracted with local newspapers to insert the advertising supplements for distribution in Denver. Walgreen contended that any exercise of dominion by it took place at its corporate headquarters outside Colorado and not "in the city" because it did not exercise dominion over the supplements after their shipment from the printers, and because its personnel had never been on the newspaper's premises for this purpose.

The court disagreed, holding that: (1) the ordinance was intended to include a broad array of "uses" within the city even though these uses might be directed by a foreign corporation from outside the city; (2) Walgreen retained control over the supplements because it had the contractual right to call the papers and stop or alter the insertion; and (3) therefore, Walgreen had used the supplements within Denver. *Walgreen Co. v.*

*Charnes, supra.* Although the *Walgreen* court did not construe the term "distribute," it appears to have been subsumed within the broad definition of "use." *See also D.H. Holmes Co. v. McNamara,* 486 U.S. 24, 108 S.Ct. 1619, 100 L.Ed.2d 21, (1988) (mailing of catalogs to Louisiana customers from outside state promoted Holmes' in-state stores and constituted a "use" within Louisiana that the state could tax).

▪ Contrary to Talbots' contention, the fact that it had no contract with a third party in Denver for the printing and distribution of its catalogs is not dispositive. The broad scope of the ordinance permits a tax on the use or distribution of property in Denver which has been directed from outside the city. *See Sharper Image Corp. v. Miller,* 42 Conn.App. 310, 678 A.2d 977 (1996) (assessment of use tax upheld against direct mail advertisements where taxpayer directed out-of-state printer to print and mail advertisements to state residents); *Comfortably Yours, Inc. v. Director, Division of Taxation,* 272 N.J.Super. 540, 640 A.2d 862 (1994) (same). *But see Sharper Image Corp. v. Michigan,* 216 Mich.App. 698, 550 N.W.2d 596 (1996) (taxpayer's distribution of mail order catalogs through United States mail to state residents was not "use" under state use tax); *Modern Merchandising, Inc. v. Department of Revenue,* 397 N.W.2d 470 (S.D. 1986) (same).

In summary, we hold that the definition of "use" contained in Denver Revised Municipal Code § 53–96 includes the distribution of promotional and advertising material by the direct mailing of catalogs to Denver addressees. Thus, Talbots retained control over its catalogs and "used" them within the meaning of the ordinance by distributing them to potential customers in Denver.

## II.

▪ Talbots next asserts that Denver's assessment violates the Commerce Clause of the United States Constitution, U.S. Const. art. I, § 8, cl. 3, because there is an insufficient connection between Denver and the activity being taxed. Again, we disagree.

A state tax that impacts interstate commerce does not violate the Commerce Clause if: (1) the tax is applied to an activity with a substantial nexus with the taxing state; (2) it is fairly apportioned; (3) it does not discriminate against interstate commerce; and (4) it is fairly related to the services provided by the taxing state. *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977); *Riverton Produce Co. v. State,* 871 P.2d 1213 (Colo.1994).

*D.H. Holmes v. McNamara, supra,* involved similar facts and construed tax statutes structurally identical to the Denver ordinances at issue. There, as here, Holmes had outside companies print its catalogs and mail them to Louisiana customers, which was deemed a use or distribution under Louisiana's equivalent taxing statute.

The United States Supreme Court approved the imposition of a use tax on advertising mailed to Louisiana residents by printers located outside the state. It rejected the taxpayer's contention that the Louisiana use tax violated the Commerce Clause, specifically concluding there was a nexus between the catalogs' use and Holmes' in-state stores. In support of its findings of a nexus, the Court noted that Holmes had offices in Louisiana; that it had ordered and paid for the catalogs and supplied a list of addressees to the printers; and that it had enjoyed the benefits of Louisiana's infrastructure.

Similarly, here, the hearing officer found a nexus based upon the presence of Talbots' employees and property in Denver.

Talbots acknowledges having two retail stores in Denver, but maintains that the nexus must be between the catalogs and the taxing jurisdiction, and not between the catalogs and the in-state stores. Talbots also contends that the Commerce Clause nexus in *Holmes* was satisfied only because Holmes was headquartered in the taxing jurisdiction whereas Talbots is headquartered outside Denver. We are not persuaded.

In *Holmes,* the Supreme Court emphasized that the catalogs were designed, among other things, to promote sales at Holmes' in-state stores, and that these stores benefitted from Louisiana's infrastructure. It thus concluded that the catalogs' promotion and advertisement of Holmes' in-state stores was a "use" within Louisiana which the state could tax and that there was a sufficient nexus between Holmes' stores and the use and distribution of its catalogs. The Court stated:

> Holmes' contention that it lacked sufficient control over the catalogs' distribution in Louisiana to be subject to the use tax verges on the nonsensical. Holmes ordered and paid for the catalogs and supplied the list of customers to whom the catalogs were sent; any catalogs that could not be delivered were returned to it. Holmes admits that it initiated the distribution to improve its sales and name recognition among Louisiana residents. Holmes also has a significant presence in Louisiana.... There is nexus aplenty here.

*D.H. Holmes Co. v. McNamara, supra,* 486 U.S. at 32–33, 108 S.Ct. at 1624, 100 L.Ed.2d at 28–29.

Although Talbots does not have as significant a presence in Colorado as Holmes had in Louisiana, nevertheless, Talbots is in essentially the same posture with respect to the mailing and distribution of its catalogs, its two in-state stores, and the City and County of Denver.

Accordingly, we reject Talbots' contention that the use tax violates the Commerce Clause.

Judgment affirmed.

JONES and BRIGGS, JJ., concur.