Associated Testing Laboratories, Inc. *vs.* Commissioner
of Revenue.

Suffolk. April 5, 1999. - June 10, 1999.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Fried, Marshall, & Ireland, JJ.

*Taxation,* Sales and use tax, Exemption, Abatement, Manufacturing corporation, Industrial plant. *Statute,* Construction. *Uniform Commercial Code,* Sale of goods.

A taxpayer sufficiently demonstrated that testing equipment it purchased was used directly and exclusively, in the actual manufacture, conversion, or processing of tangible personal property [631-632], to be sold [632-634], and that the assessed machinery was located and used in an industrial plant [634-635]: the Appellate Tax Board erred in denying the taxpayer an abatement of sales tax under the exemption set forth in G. L. c. 64H, § 6 (*s*).

Appeal from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*William A. DeVasher, Jr.,* for the plaintiff.

*John R. Hitt,* Assistant Attorney General, for the defendant.

Lynch, J. Associated Testing Laboratories, Inc. (taxpayer), appeals, pursuant to G. L. c. 58A, § 13, from a decision of the Appellate Tax Board (board), in which the board declined to abate sales taxes assessed against the taxpayer on the taxpayer's purchase of testing equipment between January, 1988, and December, 1990. The Commissioner of Revenue (commissioner) issued notices of assessment for all three tax years, and shortly thereafter the taxpayer paid all taxes, interest, and penalties assessed. The taxpayer then filed timely applications of abatement for the taxes at issue. Following a hearing before the abatement bureau of the Department of Revenue (department), the abatements were denied. The commissioner subsequently issued notice of abatement denials for the three tax years 1988, 1989, and 1990, respectively.

The taxpayer filed timely petitions with the board and the

parties filed a statement of agreed facts. The board held a hearing and affirmed the commissioner's denial of the abatements. On February 24, 1998, pursuant to the taxpayer's request under G. L. c. 58A, § 13, and 831 Code Mass. Regs. § 1.32 (1996), the board issued the decision and factual findings from which the taxpayer now appeals. The chairman who conducted the hearing did not participate in the board's decision.[1]

Except as otherwise noted, the facts are not in dispute. The taxpayer is a New Jersey corporation which operates a testing laboratory in a 27,000 square foot building containing over 1,400 pieces of testing equipment located in Burlington. The taxpayer renders testing services for its clients' products, to ensure that the items meet certain specifications. The taxpayer does not own the items tested, rather they remain the property of the taxpayer's customers throughout the testing process. Once the taxpayer completes the required tests, it returns the items to the customer. Although customers typically hire the taxpayer to test their products prior to their sale to third parties, at least one customer, a Federal government agency, requests testing on products it has purchased to determine whether these goods are in conformance with its specifications.

The sole question presented is whether G. L. c. 64H, § 6 (*s*), exempts the property at issue from sales and use tax. General-Laws c. 64H, § 6 (*s*), provides in relevant part:

> "The following sales and the gross receipts therefrom shall be exempt from the tax imposed by this chapter
> . . . .
>
> "Sales of machinery, or replacement parts thereof, used directly and exclusively . . . in an industrial plant in the actual manufacture of tangible personal property to be sold

---

[1]The taxpayer urges the court not to defer to the board's factual findings because the board member who conducted the hearing did not participate in the decision. Contrast *Kennametal, Inc.* v. *Commissioner of Revenue*, 426 Mass. 39, 43 (1997), cert. denied, 523 U.S. 1059 (1998). The taxpayer maintains that the court has before it *precisely* the same evidence, all of it written, including the transcript, the exhibits, and the statement of agreed facts, as did the board when it issued the decision and report. The taxpayer argues that the court need not defer to the board in evaluating testimony. (Only one witness testified at the hearing.)

Because the board's findings are not dispositive of the issues in this case, we need not decide this issue.

. . . . For the purpose of this paragraph . . . the term 'industrial plant' shall mean a factory at a fixed location primarily engaged in the manufacture, conversion or processing of tangible personal property to be sold in the regular course of business; and machinery shall be deemed to be used directly and exclusively in the actual manufacture, conversion or processing of tangible personal property to be sold only where such machinery is used solely during a manufacturing, conversion or processing operation to effect a direct and immediate physical change upon the tangible personal property to be sold; to guide or measure a direct and immediate physical change upon such property where such function is an integral and essential part of tuning, verifying or aligning the component parts of such property; or to test or measure such property where such function is an integral part of the production flow or function . . . . Machinery used directly and exclusively in the actual manufacture, conversion or processing of any tangible personal property which is not to be sold and which would be exempt under paragraph (*r*) of this paragraph if purchased from a vendor thereof or machinery used during any manufacturing, converting or processing, conveying or packaging operation or function or for any other purpose, except as heretofore specified, shall not be exempt under this paragraph even though such operation, function or purpose is an integral or essential part of a continuous production flow or manufacturing process."

Thus, to qualify for this exemption, the statute requires the taxpayer to demonstrate the machinery assessed was used (1) directly and exclusively; (2) in an industrial plant; (3) in the actual manufacture, conversion, or processing; (4) of tangible personal property; (5) to be sold. As applied to the instant facts, the statute further provides that the first and third requirements will be deemed to have been satisfied only where the machinery is "used solely during a manufacturing, conversion or processing operation . . . to test or measure such property where such function is an integral part of the production flow or function." The board rejected the taxpayer's argument that the machinery fell within this latter provision because "the testing services performed by [the taxpayer] were not, at all times, an integral part of the production flow," and because "the testing was not always done on items to be sold." Our review, limited as it is to

questions of law (as opposed to factual conclusions), encompasses issues of statutory construction. See *Tilcon-Warren Quarries Inc.* v. *Commissioner of Revenue*, 392 Mass. 670, 672 (1984), citing *Coomey* v. *Assessors of Sandwich*, 367 Mass. 836, 839 (1975). We now conclude that the board's ruling that the taxpayer failed to demonstrate that the testing was integral to the production flow of manufactured goods is based on an erroneous interpretation of G. L. c. 64H, § 6 (*s*).

1. *Directly and exclusively engaged in actual manufacture requirements.* Whether testing machinery is an "integral part of the production flow or function," and thus, "deemed to be used directly and exclusively in the actual manufacture, conversion or processing of tangible personal property," turns on whether the testing is a sine qua non of the produced items' ultimate salability. Contrary to the board's implicit suggestion, neither the physical proximity of the testing plant to the rest of the production line, nor the chronology of when the testing takes place is material to the analysis, so long as the test occurs prior to sale. See *Commissioner of Revenue* v. *Fashion Affiliates, Inc.*, 387 Mass. 543, 546 (1982). Rather, for purposes of the first and third requirements, it is sufficient that the testing services were an essential part of bringing the product to market.

Furthermore, we decline to read into the statute the added requirement that the testing must be performed by the same entity as the rest of the manufacturing process. The board's citation to *Arizona Dep't of Revenue* v. *Sonee Heat Treating Corp.*, 178 Ariz. 278 (1994) (construing Ariz. Rev. Stat. § 42-1409 [B] [1], renumbered as § 42-5159 [B] [1]), and *Pledger* v. *Baldor Int'l, Inc.*, 309 Ark. 30 (1992) (construing Ark. Code Ann. § 26-53-114 [C] [3] [B]), does not persuade us otherwise. The statutes in these States were less expansively drafted than G. L. c. 64H, § 6 (*s*), and neither includes a clause "deeming" certain testing machinery to be within its respective exemption.

More on point is our decision in *Commissioner of Revenue* v. *Fashion Affiliates, Inc., supra* at 545-547, a case on which the board relied in construing the exemption. In that case we concluded that the exemption in question extends to machinery used to produce "markers," a device used in the process of manufacturing dresses. *Id.* We reasoned that, despite the fact that the items produced by these machines were used up during the manufacturing process, "[t]he definition does not require that the machinery's guidance or measurement be direct or immediate in the sense of physical contact." *Id.* at 546.

Here the record indicates that the ultimate purchaser of these goods required the taxpayer's seal of approval. Items that did not measure up to required specifications were returned to the seller. Accordingly, because no sale could be final without a successful test result, the tests were integral to the production flow or function of the items tested. The taxpayer's testing machinery, therefore, satisfies the first and third statutory requirements.

2. *"To be sold" requirement.* The commissioner also asserts that at least one of the taxpayer's customers requested testing on products for which the customer was an end user. Because the customer was buying rather than selling the goods, the commissioner argues, the testing was not performed on products "to be sold" as the statute requires. We disagree.

Nothing in the statute requires the seller rather than the buyer to pay for the testing. Indeed, regardless of who pays for the testing services, the cost is undoubtedly factored into the cost of the goods. The salient factor here is that buyers requesting the taxpayer's testing services do so to determine whether they should accept certain goods and thereby consummate their purchase. Unless the product receives a satisfactory test result, they never take ownership in a legal sense. See G. L. c. 106, § 2-401 (4) ("A rejection or other refusal by the buyer to receive or retain the goods, whether or not justified, or a justified revocation of acceptance revests title to the goods in the seller"). This conclusion finds further support in the uncontroverted testimony of the only witness:

> *Q.:* "[I]t's true that you test for the government, isn't it?"
>
> *A.:* "Yes."
>
> *Q.:* "And so you test items that the government owns, is that true?"
>
> *A.:* "They don't own them until they're completed testing."
>
> *Q.:* "So there was never a case in the audit period or since then where you've tested for a government entity?"
>
> *A.:* "Directly, that's correct."

*Q.*: "Have you ever tested for NASA?"

*A.*: "Yes."

*Q.*: "Is that a government entity?"

*A.*: "Yes."

*Q.*: "So therefore your testimony is incorrect that you've never tested for the government?"

*A.*: "That's correct."

The same witness on redirect clarified this colloquy:

*Q.*: "[I]n the case of NASA that was discussed, you sold a product to the government, I believe you testified." .

*A.*: "I tested it."

*Q.*: "You tested it. Who manufactured the product; who physically produced it?"

*A.*: "It would be somebody such as National Semiconductor or Motorola or Raytheon Semiconductor."

*Q.*: "When you finished the test, is this another instance of where you would issue a certificate or a test report?"

*A.*: "In the particular instance such as this, they buy the product, and the Goddard Space Flight Center does not accept it until it has successfully completed the tests at [the taxpayer]. If they fail the test the material is returned to the manufacturer."

*Q.*: "So if your certificate had not been issued, the material would have been returned to one of those manufacturers that you mentioned?"

*A.*: "Correct. It would not have been accepted."

Even were we to conclude, as the commissioner contends, that the Uniform Commercial Code concept of title has no bear-

ing on whether an item is "to be sold" under G. L. c. 64H, § 6 (*s*), we seriously doubt that the Legislature's intent was to regard substandard items returned to the manufacturer as "sold."

3. *Industrial plant requirement.* Having concluded that the taxpayer did not qualify for the exemption on other grounds, the board did not find it necessary to determine whether the machinery is located in an "industrial plant" as the statute requires. Unlike the board, however, our conclusions necessitate this final determination. Fortunately, the statutory language and record decisively resolve the matter. We therefore turn our attention to whether the taxpayer's machinery is located "in an industrial plant" as the statute requires and conclude that it is.

Section 6 (*s*) defines "industrial plant" as "a factory at a fixed location primarily engaged in the manufacture, conversion or processing of tangible personal property to be sold in the regular course of business." The commissioner asserts that the taxpayer fails to meet this element because it does not manufacture the items it tests. He relies on *Ford Motor Co.* v. *Director of the Div. of Employment Sec.*, 326 Mass. 757, 761 (1951), in which this court defined "factory" as "a building or group of buildings, usually in the same immediate neighborhood, devoted to the manufacture of articles or commodities." In essence, the commissioner argues that, because the taxpayer does not manufacture the items it tests, the facilities housing the testing machinery cannot be a factory and, consequently, is not an industrial plant as that term is statutorily defined.

This argument fails to account for the clause in G. L. c. 64H, § 6 (*s*), that immediately follows the statutory definition of "industrial plant," however:

> "machinery shall be *deemed to be used* directly and exclusively *in the actual manufacture, conversion or processing of tangible personal property to be sold*, only where such machinery is used solely during a manufacturing conversion or processing operation to . . . test or measure such property where such function is an integral part of the production flow or function" (emphasis added).

The Legislature has therefore provided that machinery used for testing functions such as those performed by the taxpayer are "deemed" to fit within the bulk of the statute's "industrial plant" definition. Once demonstrated that its machinery is "deemed to be used . . . in the actual manufacture . . . of

Associated Testing Laboratories, Inc. *v.* Commissioner of Revenue.

property to be sold," as the taxpayer has, it need only show that the building that houses the machinery is fixed in its location and that it is "primarily engaged" in the testing process to satisfy this requirement. Here, the stipulated facts indicate that the taxpayer is exclusively engaged in testing at its fixed location in Burlington. Thus, the taxpayer's testing facility falls within the statutory definition of "industrial plant."

In sum, the taxpayer has sufficiently demonstrated that the machinery in question meets all five requirements for an exemption under G. L. c. 64H, § 6 (*s*).[2]

*Decision of the Appellate Tax Board reversed.*

[2]The commissioner does not dispute the final requirement that the items tested be "tangible personal property."