## COMMISSIONER OF REVENUE vs. J.C. PENNEY COMPANY, INC.

Suffolk. March 9, 2000. - June 14, 2000.

Present: ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Taxation,* Sales and use tax, Abatement, Judicial review. *Statute,* Construction. *Words,* "Use."

Where a retailer exercised substantive rights and powers over its mail order catalogs, produced and distributed from without the Commonwealth, by effectuating the delivery of the catalogs to Massachusetts addresses through the United States Postal Service, such taxpayer control over items of tangible personal property constituted a taxable "use" of that property within the meaning of G. L. c. 64I, § 2. [688-693, 693-694]

Discussion of cases in other jurisdictions that have addressed the issue of assessment of taxes on catalogs distributed by interstate mail. [694-696]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John E. Bowman, Jr.,* Assistant Attorney General, for the Commissioner of Revenue.

*Kathleen King Parker* for the taxpayer.

LYNCH, J. The Commissioner of Revenue (commissioner) appeals, pursuant to G. L. c. 58A, § 13, from a decision of the Appellate Tax Board (board) ordering an abatement of a use tax assessed on catalogs that J.C. Penney Company (taxpayer) mailed from out-of-State locations to Massachusetts residents between the years 1991 and 1993.[1] See G. L. c. 64I, § 2. The commissioner argues that the board erred in concluding that the taxpayer's distribution of these catalogs did not constitute a taxable "use" of property, as that term is statutorily defined. G. L. c. 64I, § 1. We transferred the case here on our own motion and now reverse the board's decision.

[1]The board affirmed the commissioner's denial of an application abatement of a use tax assessed on gift boxes that the taxpayer distributed to customers in its Massachusetts retail stores. The taxpayer has not appealed from this decision.

1. *Facts.* The taxpayer, a Delaware corporation with its principal place of business in Plano, Texas, is engaged in the business of retail merchandising. During the relevant tax periods, it operated retail stores in all fifty States, including ten stores in Massachusetts, and a direct mail catalog business, which it administered separately from the retail store division.

In connection with its catalog business, each year the taxpayer issued three major seasonal catalogs, as well as various small sale or specialty catalogs, that described and illustrated merchandise available for purchase by mail order. The planning, artwork, design, and layout for these catalogs were completed and paid for outside of Massachusetts, primarily in Texas, and the taxpayer contracted with independent printing companies located outside the Commonwealth to produce the catalogs. During the relevant time period, the three major catalogs were printed in Indiana, while the specialty catalogs were printed in South Carolina and Wisconsin. The taxpayer supplied the printers with paper, shipping wrappers, and address labels for the catalogs; the printers supplied the ink, binding materials, and labor. None of these materials was purchased in Massachusetts.

Printed catalogs, with address labels and postage affixed, were transported by a common carrier from the printer to a United States Postal Service office located outside Massachusetts, where they were sent to Massachusetts addressees via third or fourth class mail. Title to the catalogs passed from the printer to the taxpayer when the common carrier assumed possession. Although the taxpayer made no effort to recall or to change the time or method of delivery of the catalogs after they left the printers' facilities, it instructed the postal service, from its offices outside Massachusetts, to return any undeliverable catalogs to its catalog distribution center in Connecticut.

The catalogs advertised a broader range of merchandise than was available for purchase in the taxpayer's retail stores. The taxpayer's express purpose for mailing these catalogs, free of charge, to residents of, among other places, Massachusetts, was to solicit mail order purchases from current and potential customers. Catalog recipients were selected by the taxpayer at its offices outside Massachusetts. Purchases of catalog merchandise were made by telephoning or returning an order form to the taxpayer at a location outside Massachusetts, and the merchandise was shipped to customers from the taxpayer's Connecticut distribution center.

For each sales and use tax period in the years 1991-1993, the taxpayer filed Massachusetts sales and use tax returns and paid the taxes reflected thereon as due. On August 3, 1993, the commissioner notified the taxpayer that these tax returns had been selected for audit, and on April 26, 1995, assessed the taxpayer for unpaid use taxes, of which $314,674.42, plus interest and penalties, represented a tax on the value of the catalogs the taxpayer mailed to Massachusetts residents during the relevant tax periods. The taxpayer paid the assessment and applied for an abatement. Following the commissioner's denial of this application, the taxpayer appealed to the board. In ordering an abatement of the use tax assessed on the mailed catalogs, the board held that the taxpayer, in causing the catalogs to be mailed from out-of-State locations to Massachusetts residents, had not made a taxable "use" of these items of tangible personal property in Massachusetts, as required by the use tax statute, G. L. c. 64I, § 2.

2. *Discussion.* Our review of a decision by the board is limited to questions of law, see G. L. c. 58A, § 13; *Towle* v. *Commissioner of Revenue*, 397 Mass. 599, 601 (1986), and "encompasses issues of statutory construction." *Associated Testing Labs., Inc.* v. *Commissioner of Revenue*, 429 Mass. 628, 631 (1999), citing *Tilcon-Warren Quarries Inc.* v. *Commissioner of Revenue*, 392 Mass. 670, 672 (1984). The taxpayer has the burden of proving as a matter of law its right to an abatement of the tax. See *Towle* v. *Commissioner of Revenue, supra* at 603. The sole question presented by this appeal is whether the term "use" in G. L. c. 64I, § 2, as defined in G. L. c. 64I, § 1, encompasses a taxpayer's distribution of merchandise catalogs to Massachusetts addressees by means of interstate mail for the purpose of soliciting retail business. We answer this question in the affirmative and, therefore, reverse the board's decision.

General Laws c. 64I, § 2, imposes an excise tax, at the rate of five per cent, on "the storage, use or other consumption in the [C]ommonwealth of tangible personal property or services purchased from any vendor for storage, use, or other consumption within the [C]ommonwealth." "Use" is defined, in relevant part, to "mean and include . . . the exercise of any right or power over tangible personal property incident to the ownership of that property, except that it does not include the sale of that property in the regular course of business." G. L. c. 64I, § 1. Significantly, tangible personal property shipped or brought into

Massachusetts by the purchaser within six months after its out-of-State purchase is presumed to have been purchased for storage, use, or other consumption in the Commonwealth. G. L. c. 64I, § 8 (*f*). The use tax established by G. L. c. 64I, together with the sales tax in G. L. c. 64H, are complementary elements of a unitary taxing program intended to "reach all transactions, except those expressly exempted, 'in which tangible personal property is sold inside or outside the Commonwealth for storage, use, or other consumption within the Commonwealth.' " *M & T Charters, Inc.* v. *Commissioner of Revenue*, 404 Mass. 137, 140 (1989), quoting *Boston Tow Boat Co.* v. *State Tax Comm'n*, 366 Mass. 474, 477 (1974); *Towle* v. *Commissioner of Revenue*, *supra* at 604. The use tax was thus designed "to prevent the loss of sales tax revenue from out-of-State purchases," *M & T Charters, Inc.* v. *Commissioner of Revenue*, *supra*, and to protect local merchants from loss of business to merchants in other States with lower or nonexistent sales taxes. See *New York Times Co.* v. *Commissioner of Revenue*, 22 Mass. App. Tax Bd. Rep. 177, 192 (1997), aff'd, 427 Mass. 399 (1998). See also 2 J. & W. Hellerstein, State Taxation § 16.03[3] (3d ed. 1998).

In concluding that the taxpayer had not made a taxable "use" of the catalogs mailed to Massachusetts residents, the board reasoned that the taxpayer's activities with respect to the catalogs did not constitute an exercise *in* the Commonwealth of a right or power incident to the ownership of tangible personal property situated in Massachusetts. G. L. c. 64I, §§ 1, 2. In the board's view, the "exercise" of a right or power over property, such as control, equates with "some degree or form of activity," yet "none of the [taxpayer's] activities undertaken to arrange the in-State distribution of the catalogs occurred in Massachusetts [n]or did [the taxpayer's] relevant activities occur while the catalogs were in the Commonwealth." The board further reasoned that, had the Legislature intended a taxpayer's mailing of catalogs to Massachusetts residents to be subject to the use tax, it would have expressly designated the "distribution" of property as a taxable use in G. L. c. 64I, § 1, as other States have done. Finally, the board interpreted this court's decision in *George S. Carrington Co.* v. *State Tax Comm'n*, 375 Mass. 549, 552-553 (1978), to imply that the use tax cannot apply in the circumstances presented by this case, and rejected as unpersuasive numerous decisions from other jurisdictions that have held to the contrary.

In urging us to affirm the board's decision, the taxpayer argues that assessment of a use tax is improper where, as here, the taxpayer "did not do anything with the catalogs in Massachusetts."[2] While this proposition is not objectionable in principle, we reject its application to the undisputed facts of this case. For, contrary to the board's conclusion and the taxpayer's contention, the taxpayer here did, in a very real sense, "do something" with its catalogs in the Commonwealth by distributing them, via the United States Postal Service, to Massachusetts residents, thereby deploying them in the service of its Massachusetts direct mail retail business.

It is a settled principle of our taxation jurisprudence that tax statutes are "to be construed as imposing taxes with respect to matters of substance and not with respect to mere matters of form." *Green* v. *Commissioner of Corps. & Taxation*, 364 Mass. 389, 394 (1973), quoting *Commissioner of Corps. & Taxation* v. *Second Nat'l Bank*, 308 Mass. 1, 6 (1941). It is apparent from the board's findings that the taxpayer, even though it did not itself physically possess the catalogs in Massachusetts, nevertheless exercised substantive rights and powers over the catalogs in the Commonwealth by effectuating their delivery to Massachusetts addressees. As the board observed, citing its own precedent, although the acts constituting an exercise of a right or power over property must occur in Massachusetts in order for a taxable "use" to occur, it is not necessary that the taxpayer

---

[2]The taxpayer asserts, additionally, that it did not have any right or power over the catalogs while they were in the Commonwealth, which assertion is practically indistinguishable from a denial of ownership of the catalogs. This claim, however, is not supported by the board's findings that the taxpayer acquired title to the catalogs before they were mailed into Massachusetts and instructed the postal service to return any undelivered catalogs to its Connecticut distribution center, facts that indicate that the taxpayer never relinquished its title to, and right to possess, the catalogs in Massachusetts until such time as they were delivered to their intended recipients. Moreover, United States Postal Service regulations give the sender or its representative the exclusive right to recall mail prior to its delivery. See 39 C.F.R. § 111.5 (1999); United States Postal Service Domestic Mail Manual, D030, § 1.1. Finally, the board's own prior construction of G. L. c. 64I, §§ 1, 2, indicates that the rights over property, the exercise of which constitutes a taxable "use," include the "right to employ property in the conduct of a business." *New York Times* v. *Commissioner of Revenue*, 22 Mass. App. Tax Bd. Rep. 177, 191 (1997), aff'd, 427 Mass. 399 (1998). Thus, we have no doubt that the taxpayer owned the catalogs within the Commonwealth and had rights and powers incident to that ownership. The sole issue, therefore, is whether the taxpayer *exercised in Massachusetts* any such right or power.

itself directly perform these acts, but rather this requirement may be satisfied where another possesses and acts on property in the Commonwealth at the taxpayer's direction. See, e.g., *New York Times Co.* v. *Commissioner of Revenue, supra* at 189-190, and *Federal Express Corp.* v. *Commissioner of Revenue,* 23 Mass. App. Tax Bd. 1, 3-4 (1997), aff'd, 427 Mass. 399 (1998) (taxpayer's directing, through in-State operator, travel of aircraft located in Massachusetts constituted taxable use). This principle is applicable here, as the United States Postal Service, which carried the catalogs into the Commonwealth and delivered them to Massachusetts residents, possessed and acted on the taxpayer's property in the Commonwealth at all times in accordance with the taxpayer's express instructions and on the taxpayer's behalf. The taxpayer, who acquired title to the catalogs prior to their entry into Massachusetts, directed the postal service, and paid it a fee, to deliver the catalogs to specified Massachusetts residents; absent these directions, the catalogs would never have made their way into the Commonwealth or, once here, into the hands of their addressees. Moreover, the taxpayer instructed the postal service regarding the disposition of undelivered catalogs, directing that they be carried out of Massachusetts and returned to its Connecticut distribution center.[3] Pursuant to the board's own prior construction of G. L. c. 64I, § 2, this indirect taxpayer control of the catalogs is indistinguishable, for purposes of determining the applicability of the use tax, from the control the taxpayer would have exercised had it chosen to ship the catalogs into the Commonwealth and to effectuate their delivery by means of a common carrier or its own employees.[4] See *New York Times Co.* v. *Commissioner of Revenue, supra; Federal Express Corp.* v.

[3]However, we would not consider a taxpayer's failure to request such a return of undelivered mail to be evidence, by itself, of an absence of taxpayer control over mailed items. See, e.g., *Sharper Image Corp.* v. *Miller,* 240 Conn. 531, 540 (1997) (conclusion that taxpayer exercised control over mailed catalogs not precluded by fact that taxpayer made intentional business decision to have postal service destroy undelivered catalogs).

[4]The taxpayer asserts that this conclusion "ignores the tradition in case law that honors for tax purposes the very real distinction between doing something oneself and having the Postal Service or common carrier do it for you." As support for this purported tradition, the taxpayer cites the decisions of the United States Supreme Court in *Quill Corp.* v. *North Dakota,* 504 U.S. 298, 311 (1992), and *National Bellas Hess, Inc.* v. *Department of Revenue of Ill.,* 386 U.S. 753, 759 (1967). However, neither of these decisions stands for the rule asserted. Each case involved a constitutional challenge to a State's assess-

*Commissioner of Revenue, supra.* Such taxpayer control by proxy over items of tangible personal property sent into Massachusetts via interstate mail thus constitutes an exercise within the Commonwealth of a right or power incident to ownership of that property and, therefore, a "use" of that property within the meaning of G. L. c. 64I, § 2.[5] See, e.g., *Service Merchandise Co.* v. *Arizona Dep't of Revenue,* 188 Ariz. 414, 417 (Ct. App. 1996); *Sharper Image Corp.* v. *Miller,* 240 Conn. 531, 540 (1997); *J.C. Penney Co.* v. *Balka,* 254 Neb. 521, 527 (1998).

Moreover, the economic and commercial reality of the taxpayer's distribution of the catalogs clearly warrants the conclusion that the taxpayer made a taxable "use" of the catalogs in Massachusetts. As the board found, the taxpayer's avowed purpose in mailing the catalogs to Massachusetts addressees was the solicitation of purchase orders from current and prospective customers. By means of the catalogs, then, the taxpayer advertised its merchandise and offered goods for sale in the Commonwealth, and provided Massachusetts residents

---

ment of a use tax on goods purchased for use in the taxing State by an out-of-State mail order merchant that had no in-State retail outlets or sales representatives. The Supreme Court concluded that a State's assessment of a use tax in such circumstances violates the commerce clause of the Federal Constitution, art. 1, § 8, because "a vendor whose only contacts with the taxing State are by mail or common carrier lacks the 'substantial nexus' required by the Commerce Clause." *Quill Corp.* v. *North Dakota, supra,* citing *National Bellas Hess, Inc.* v. *Department of Revenue of Ill., supra.* This is a far cry from invoking a rule that the acts of a delivery agent cannot, for taxation purposes, be attributed to the sender of mailed items of tangible property. Indeed, in *D.H. Holmes Co.* v. *McNamara,* 486 U.S. 24, 32 (1988), which was cited approvingly in *Quill Corp.* v. *North Dakota, supra,* the Supreme Court concluded, in circumstances similar to those present here, that it "verge[d] on the nonsensical" to claim that the taxpayer did not have control over catalogs that it directed the United States Postal Service to deliver to residents of the taxing State.

[5]Of course, it remains the case that for an assessment of a use tax on mailed promotional material to be consistent with the commerce clause of the United States Constitution, art. 1, § 8, it must be shown, among other things, that the sender has a "substantial nexus" with the Commonwealth, including a physical presence in Massachusetts. See *Quill Corp.* v. *North Dakota, supra*; *D.H. Holmes Co.* v. *McNamara, supra*; *National Bellas Hess, Inc.* v. *Department of Revenue of Ill., supra* at 757-758 & n.9. See also *Complete Auto Transit, Inc.* v. *Brady,* 430 U.S. 274, 279 (1977); *George S. Carrington Co.* v. *State Tax Comm'n,* 375 Mass. 549, 551-552 (1978). The taxpayer here, who operated retail stores in Massachusetts throughout the relevant tax periods, has not challenged the Commonwealth's constitutional authority to assess a use tax on its interstate mailings.

the means for making purchases (i.e., toll-free telephone number and mail order forms). The catalogs were thus intended to, and did, serve as an instrument in the taxpayer's conduct of a commercial enterprise within the Commonwealth. We conclude that the term "use" in G. L. c. 64I, § 2, encompasses such a commercial utilization of direct mail catalogs and like promotional materials to conduct business in Massachusetts markets, a conclusion that accords with the board's own prior interpretation of the scope of the use tax. *New York Times Co.* v. *Commissioner of Revenue, supra* at 191 (powers which owner as well as lessee of tangible personal property may exercise include "the right to employ property in the conduct of a business"). See *Jan Co. Cent.* v. *Commissioner of Revenue*, 405 Mass. 686, 689 (1989), citing *Prince* v. *State Tax Comm'n*, 366 Mass. 470, 473-474 (1974), and *Clark Franklin Press Corp.* v. *State Tax Comm'n*, 364 Mass. 598, 602 (1974) ("certain transfers of tangible personal property . . . are incidental to the transferor's business, serving to facilitate the consummation of the principal transactions" and, therefore, subject to taxation pursuant to G. L. c. 64I, § 2). See also *J.C. Penney Co.* v. *Balka, supra* at 527; *Comfortably Yours, Inc.* v. *Director, Div. of Taxation*, 12 N.J. Tax 570, 575-577 (1992), aff'd, 272 N.J. Super 540, 542 (1994); *Modern Merchandising, Inc.* v. *Department of Revenue*, 397 N.W.2d 470, 474 (S.D. 1986) (Sabers, J., dissenting); *J.C. Penney Co.* v. *Olsen*, 796 S.W.2d 943, 946 (Tenn. 1990).[6]

The absence of the term "distribution" from G. L. c. 64I, §§ 1, 2, does not preclude our construing the term "use" in these statutes to encompass an interstate mailing of promotional materials such as catalogs. Any significance which might be at-

---

[6]This conclusion is further supported by a leading authority on State taxation:

"In our view, physical control or possession of the catalogs or preprints . . . are inappropriate measuring rods for determining whether a taxable use of the promotional materials in the state by the vendors took place. Use ought to be judged by economic standards. . . . '[A]dvertising is used by advertisers . . . for the purpose of making sales.' The economic utilization of the promotional materials lies in getting them to the prospective customers in the state. The advertiser, which had the articles produced, delivered them to the prospects through its agents — the printer, the Post Office, the common carrier, or the private trucker. Such delivery in the state and such exploitation of the state's market by the taxpayer or its agents on its behalf ought to be treated as a taxable use of the catalogs or advertising supplements in the market state." 2 J. & W. Hellerstein, State Taxation, § 16.03[3][a], at 16-19 (3d ed. 1998).

tributed to this absence is outweighed by the Legislature's having defined "use" broadly to "mean[] and include[] . . . the exercise of *any* right or power over tangible personal property incident to the ownership of that property," G. L. c. 64I, § 1, a definition that plainly encompasses a taxpayer's directing another to deliver to intended recipients property to which the taxpayer holds legal title. See Sears, Roebuck & Co. *vs.* State Tax Comm'n, Appellate Tax Bd. No. 64952 (June 27, 1975), rev'd on other grounds, 370 Mass. 127 (1976) ("It is hard to find language broader in sweep and scope than that used [in G. L. c. 64I, § 1,] to express the intent of the [L]egislature"). Moreover, as already noted, we have previously interpreted the use tax as a complement to the sales tax in a unitary taxing program designed "to reach all transactions, except those expressly exempted, 'in which tangible personal property is sold inside or outside the Commonwealth for storage, use or consumption within the Commonwealth.' " *M & T Charters, Inc.* v. *Commissioner of Revenue*, 404 Mass. 137, 140 (1989), quoting *Boston Tow Boat Co.* v. *State Tax Comm'n*, 366 Mass. 474, 477 (1974). See G. L. c. 64I, § 7. Neither the board nor the taxpayer has cited any statutory provision that would exempt from the use tax a taxpayer's distribution by mail in Massachusetts of catalogs it purchased outside the Commonwealth. Cf. *Sears, Roebuck & Co.* v. *State Tax Comm'n, supra* at 130-131 (distribution of advertising supplements in newspapers, although assumed taxable "use" pursuant to G. L. c. 64I, § 1, held exempt from use tax pursuant to newspaper exemption, G. L. c. 64I, § 7 [*b*]).[7]

*George S. Carrington Co.* v. *State Tax Comm'n*, 375 Mass. 549 (1978), cited by the board, is not to the contrary. That case presented the obverse factual situation from this: the taxpayer, a Massachusetts printer who prepared fund-raising materials on behalf of out-of-State religious charities and mailed those materials to designated prospective donors, most of whom resided outside the Commonwealth, was assessed a sales tax on the mailed materials pursuant to G. L. c. 64H. See *id.* at 550.

---

[7]We note, additionally, that during the relevant tax period, the taxpayer self-assessed and paid the use tax on catalogs shipped to its Massachusetts retail stores and distributed to customers there. The taxpayer thus appears to concede that the distribution of catalogs, as such, falls within the statutory definition of a taxable "use." Its argument, therefore, reduces to its claim that the postal service, not the taxpayer, distributed the direct mail catalogs in Massachusetts, a claim which we have adequately addressed above.

The taxpayer argued that the commissioner's imposition of a sales tax on materials mailed out of State was unconstitutional because, among other things, there was a danger that interstate commerce would thus be "smothered by cumulative taxes of several States." *Id.* at 552-553, quoting *Complete Auto Transit, Inc.* v. *Brady*, 330 So. 2d 268, 272 (Miss. 1976), aff'd, 430 U.S. 274 (1977). In rejecting this argument, this court reasoned, first, that, because title to the goods passed in Massachusetts and the taxpayer did not have any out-of-State agents to whom it mailed the materials, the taxpayer did not engage in any activity that would support the imposition of a sales tax by another State; and, second, that the risk that the transaction might be subject to a use tax in another State was likewise insubstantial, as most States have enacted statutes that allow taxpayers a credit against assessed use taxes for sales taxes paid to other jurisdictions. See *George S. Carrington Co.* v. *State Tax Comm'n, supra* at 553. Thus, nowhere in that case did this court state or imply that no taxable "use" of property can occur where promotional materials produced in one State are mailed to individuals in another State. Indeed, the court's reasoning in that case fairly implies the opposite view, namely, assuming that the constitutional prerequisites for a State's taxation of interstate commerce are satisfied, a use tax may validly be assessed on mailed promotional materials in circumstances such as those present here, subject to a tax credit for sales taxes paid in the State where the taxpayer purchased the materials.

The conclusion we reach today accords with the modern trend among jurisdictions that have addressed this issue. In *D.H. Holmes Co.* v. *McNamara*, 486 U.S. 24, 32 (1988), the United States Supreme Court upheld Louisiana's assessment of a use tax on the taxpayer's in-State distribution of catalogs via interstate mail. While we recognize, as did the board below, that the *D.H. Holmes Co.* case involved a Federal constitutional challenge to a State's authority to tax interstate commerce,[8] we nevertheless consider the Supreme Court's reasoning instructive with respect to the issue of a taxpayer's control of property sent into a taxing State by means of the United States Postal Service.

---

[8]The Supreme Court accepted the Louisiana Court of Appeals' construction of "use" in that State's use tax statute to include the distribution of direct mail catalogs. See *D.H. Holmes Co.* v. *McNamara*, 486 U.S. 29, 32 (1988), citing *McNamara* v. *D.H. Holmes Co.*, 505 So. 2d 102, 105 (La. Ct. App. 1987).

For in concluding that the taxpayer had a substantial nexus with Louisiana that would justify the State's assessment of a use tax on the taxpayer's interstate mailings, the Supreme Court reasoned, in part, that the taxpayer's claim that it lacked control over the catalogs' in-State distribution "verge[d] on the nonsensical," as the taxpayer "ordered and paid for the catalogs and supplied the list of customers to whom the catalogs were sent; any catalogs that could not be delivered were returned to it . . . [and the taxpayer] admit[ted] that it initiated the distribution to improve its sales and name recognition among Louisiana residents. . . . The [taxpayer's] distribution of catalogs to . . . Louisiana customers was directly aimed at expanding and enhancing its Louisiana business." *Id.* In the wake of the Supreme Court's decision, the overwhelming majority of State appellate courts that have considered the issue have concluded that a taxpayer's distribution of merchandise catalogs and other promotional materials via interstate mail constitutes a taxable "use" of those materials in the destination State. See, e.g., *Service Merchandise Co.* v. *Arizona Dep't of Revenue*, 188 Ariz. 414, 417 (1996); *Talbots, Inc.* v. *Schwartzberg*, 928 P.2d 822, 823-824 (Colo. Ct. App. 1996); *Sharper Image Corp.* v. *Miller*, 240 Conn. 531, 540 (1997); *Sharper Image Corp.* v. *Department of Revenue*, 704 So. 2d 657, 659-660 (Fla. Dist. Ct. App. 1997), cert. denied, 526 U.S. 1016 (1999); *Collins* v. *J.C. Penney Co.*, 218 Ga. App. 405, 407-410 (1995); *American Express Travel Related Servs. Co.* v. *Tax Comm'n*, 128 Idaho 902, 903-905 (1996); *J.C. Penney Co.* v. *Balka*, 254 Neb. 521, 527 (1998); *J.C. Penney Co.* v. *Olsen*, 796 S.W.2d 943, 945 (Tenn. 1990). See also Sharper Image Corp. v. Comptroller of the Treasury, Md. Tax Ct. No. 582 (Feb. 18, 1993); *Comfortably Yours, Inc.* v. *Director, Div. of Taxation*, 12 N.J. Tax 570,

574-578 (1992).[9,10]

Finally, as we have already observed, the underlying policy of G. L. c. 64I, § 2, supports the assessment of a use tax on property purchased outside Massachusetts for, inter alia, "use" within the Commonwealth in order both to prevent the loss of sales tax revenue to neighboring States and to ensure that Massachusetts businesses may compete on an even footing with their counterparts in other States with lower or nonexistent sales taxes. To hold the use tax inapplicable to the circumstances of this case would frustrate each of these policy goals by allowing

---

[9]Both the board and the taxpayer note that, in some instances where State appellate courts have held the use tax applicable to the interstate distribution by mail of catalogs and promotional materials, the use tax statute in question expressly denoted "distribution" either as a taxable activity or as an element of the definition of "use." However, our review of these cases reveals that, although the statutes at issue expressly mentioned "distribution," these courts nevertheless concluded that the taxpayer's distribution of merchandising and promotional materials was encompassed by the more general term "use." See, e.g., *Talbots, Inc.* v. *Schwartzberg*, 928 P.2d 822, 823-824 (Colo. Ct. App. 1996); *Collins* v. *J.C. Penney Co.*, 218 Ga. App. 405, 408-409 (1995); *J.C. Penney Co.* v. *Olsen*, 796 S.W.2d 943, 945 (Tenn. 1990). See also *Sharper Image Corp.* v. *Department of Revenue*, 704 So. 2d 657, 659-660 (Fla. Dist. Ct. App. 1997).

[10]The taxpayer cites numerous State appellate court decisions that have held the use tax inapplicable in circumstances comparable to those presented here. However, of these cases, only one postdates *D.H. Holmes Co.* v. *McNamara*, 486 U.S. 24 (1988). In *Sharper Image Corp.* v. *Department of Treasury*, 216 Mich. App. 698, 702-703 (1996), on which the board relied in its decision, the Michigan Court of Appeals reasoned that, for that State's use tax to apply, "a taxpayer must perform in Michigan one of the activities listed in the definition of 'use'," and because "distribution" was not included in that list, the tax could not be applied to the taxpayer's mailing of merchandise catalogs. As we have noted above, however, G. L. c. 64I, § 1, does not list specific examples of activities constituting a taxable "use" of property, but instead defines "use" broadly as "the exercise of *any* right or power" incident to the ownership of tangible personal property. Finally, after reviewing the cited appellate decisions that predate *D.H. Holmes Co.* v. *McNamara, supra*, we conclude that their reasoning is unpersuasive, as many rely on the untenable view that a taxpayer who utilizes the interstate mails to deliver promotional materials to residents of the taxing State, because it does not itself have physical possession of the property in the State, lacks real or substantial control over the mailed materials. See, e.g., *Modern Merchandising, Inc.* v. *Department of Revenue*, 397 N.W.2d 470, 472 (S.D. 1986); *District of Columbia* v. *W. Bell & Co.*, 420 A.2d 1208, 1209 (D.C. Ct. App. 1980); *Bennett Bros.* v. *State Tax Comm'n*, 62 A.D.2d 614, 615 (N.Y. 1978); *Mart Realty, Inc.* v. *Norberg*, 111 R.I. 402, 410-411 (1973); *Hoffmann-LaRoche, Inc.* v. *Porterfield*, 16 Ohio St. 2d 158, 162 (1968).

a merchant operating in Massachusetts to avoid taxes altogether on promotional materials it uses to generate retail business in the Commonwealth merely by arranging to have these materials produced in, and mailed to prospective Massachusetts customers from, other States that impose no sales tax on the purchase of these materials. Such an outcome, by encouraging Massachusetts merchants to have their promotional mailings produced out-of-State, would clearly result in a loss of sales tax revenue for the Commonwealth, and would put Massachusetts companies that produce such promotional materials under a competitive disadvantage relative to producers in those other States. Moreover, there is no danger that merchants subject to a Massachusetts use tax on their interstate promotional mailings will suffer from an excessive, cumulative tax burden, as the Legislature has provided a credit against assessed use taxes for any sales taxes paid to other jurisdictions that offer a similar credit for sales taxes paid to the Commonwealth. See G. L. c. 64I, § 7 (*c*).

In sum, the assessment of a use tax on catalogs and other promotional materials that a Massachusetts merchant sends to residents of the Commonwealth by interstate mail is consistent both with the plain language of G. L. c. 64I, § 2, and its underlying policy. Accordingly, the taxpayer has not met its burden of proving that it is entitled to an abatement of the use tax assessed on its direct mail catalogs.

*Decision of the Appellate Tax Board reversed.*