TENNECO INC. *vs.* COMMISSIONER OF REVENUE.

No. 00-P-1864.

Suffolk. September 11, 2002. - January 9, 2003.

Present: GREENBERG, SMITH, & GELINAS, JJ.

*Taxation,* Income tax. *Corporation,* Subsidiary.

Management fees that a utility corporation received from its subsidiaries
    constituted taxable "net income" for purposes of G. L. c. 63, § 52A(2).
    [44-46]

APPEAL from a decision of the Appellate Tax Board.

*Maxwell D. Solet* for the taxpayer.

*Daniel J. Hammond,* Assistant Attorney General, for Commissioner of Revenue.

GREENBERG, J. For the years 1981 through 1984, Tenneco Inc. (Tenneco)[1] claimed exemption from income tax liability for management fees received from its subsidiaries on the ground that the term "net income," as used in G. L. c. 63, § 52A(2), does not encompass the "paper revenue" it derived from services it performed as a parent corporation.[2] The Commissioner of Revenue (commissioner) did not agree. He issued a determination letter in which he concluded that Tenneco owed deficiencies in excess of $7.5 million[3] for the four years in question. Tenneco, in turn, paid the full amount of the assess-

[1] In 1987, Tenneco Inc. changed its name to "Tennessee Gas Pipeline Company." For convenience, we will refer to "Tenneco" throughout.

[2] The applicable portion of the statute reads as follows: "Every utility corporation doing business both within and without the commonwealth shall pay annually a tax upon its corporate franchise equal to six and one-half per cent of that portion of its net income during the taxable year as is allocable to the commonwealth." G. L. c. 63, § 52A(2), as amended by St. 1971, c. 555, § 38.

[3] This total includes amounts attributable to other disputes with the commissioner, from which Tenneco does not appeal.

ments and filed applications for abatements pursuant to G. L. c. 62C, § 37, which were denied. Timely petitions to the Appellate Tax Board (board) resulted in an affirmance of the commissioner's determination, and Tenneco appeals.

During the years at issue, Tenneco was a corporation organized under the laws of Delaware, headquartered in Houston, Texas. Tenneco was comprised of five internal divisions as well as numerous wholly owned subsidiaries that conducted a variety of businesses ranging from natural gas pipelines and oil and gas exploration to shipbuilding, automotive parts, and insurance. Several of the subsidiaries conducted business in Massachusetts.

Of particular relevance to this appeal, Tenneco had management agreements with its Massachusetts subsidiaries by which Tenneco agreed to provide them with certain "unique benefits and services . . . which would be otherwise unavailable" to them were they not a member of the Tenneco organization. These included consulting services, telecommunications services, access to in-house legal counsel, insurance coverage, and centralized pension and employee benefits administration. In return, each subsidiary agreed to pay Tenneco a monthly "management service fee" in an amount indexed to the consolidated operating revenues of the subsidiary. During the years at issue, Tenneco treated the management fees it generated from its Massachusetts subsidiaries as "book income." It did not include the fees as gross income when it filed its Federal and Massachusetts tax returns, and neither did the subsidiaries claim deductions for payment of these fees on their returns.

At trial before the board, Tenneco introduced evidence, unchallenged by the commissioner, that it had begun charging the managerial fees in order to satisfy a covenant on its debt obligations. The covenant required Tenneco to maintain a certain ratio of operating income to debt expense. Because its agreement with the bond holders placed strict limitations on the percentage of Tenneco's income that could be received in the form of dividends and interest payments from its subsidiaries, Tenneco structured a payment stream of these management fees in order to satisfy the requirements of the debt instrument. In addition, Tenneco presented evidence — which the commis-

sioner did not attempt to rebut — that monies received from subsidiaries in the form of management fees were "funneled" back to the subsidiaries, often on the same day the management fees were received by Tenneco. Because of the circularity of the payment stream,[4] Tenneco argued below, the management fees were book income from which Tenneco derived no benefit, and should be excluded from its taxable "net income."

Although factual determinations by the board will be disturbed only if not supported by "substantial evidence," *Tenneco Inc.* v. *Commissioner of Rev.*, 401 Mass. 380, 383 (1987), errors of law are subject to full review by this court, see G. L. c. 58A, § 13. This includes issues of statutory construction. See, e.g., *Commissioner of Rev.* v. *J.C. Penney Co.*, 431 Mass. 684, 686 (2000).

The single question before us is whether the language of G. L. c. 63, § 52A(2), encompasses the management fees at issue here. The burden of proving a right to abatement falls on Tenneco. See *Towle* v. *Commissioner of Rev.*, 397 Mass. 599, 603 (1986). As a utility corporation, Tenneco pays a tax based on its net income. "Net income" is defined in pertinent part as "*gross income from all sources, without exclusion,* other than dividends from investment in such other utility corporations which represent eighty per cent or more of the voting stock thereof, for the taxable year, less the deductions, but not credits, allowable under the provisions of the Federal Internal Revenue Code, as amended and in effect for the taxable year" (emphasis added). G. L. c. 63, § 52A(1)(*b*), as amended by St. 1971, c. 555, § 37. The single enumerated exclusion does not apply, leaving Tenneco to contend that its management fees are not covered by the phrase "gross income from all sources, without exclusion."

Perhaps because it knows its position defies a plain language analysis, Tenneco first points to 26 U.S.C. § 482 (2000), the Federal law authorizing the Federal tax commissioner the discre-

---

[4]No impropriety is alleged merely because of this circularity; the nature of the transactions was disclosed in Tenneco's filings with the Securities and Exchange Commission. The difficulty that gave rise to this case occurred solely because Tenneco did not include the management fees as income for Massachusetts tax purposes.

tion to "distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among [affiliated entities], if he determines that such distribution, apportionment, or allocation is necessary in order . . . clearly to reflect the income of any of such organizations, trades, or businesses."

The Massachusetts Legislature granted the commissioner similar authority with respect to foreign corporations. G. L. c. 63, § 39A. What it has not done, however, is grant this authority with respect to utility corporations. See G. L. c. § 63, 52A. "Where the Legislature has carefully employed specific language in one paragraph of the statute, but not in others which treat the same topic, the language should not be implied where it is not present." *First Natl. Bank* v. *Judge Baker Guidance Center*, 13 Mass. App. Ct. 144, 153 (1982) (citations omitted). Since the Legislature could have authorized the same discretionary authority with respect to utility corporations, "the fact that it did not requires the conclusion that its choice was deliberate." *County of Middlesex* v. *Newton*, 13 Mass. App. Ct. 538, 543 n.9 (1982).

Next, Tenneco claims that the commissioner and the board erred in failing to look past the form of the transaction to its substance, because monies it paid itself are not really income at all. Our cases do distinguish an "actual" gain from a "fictional" one. *Bill DeLuca Enterprises, Inc.* v. *Commissioner of Rev.*, 431 Mass. 314, 323 (2000). Actual income "is based on the practical conception that additional property has come to the taxpayer out of which some contribution is exacted and can be paid for the support of government." *Bryant* v. *Commissioner of Corps. & Taxn.*, 291 Mass. 498, 501 (1935), and cases cited. This comports with the settled law of the Commonwealth to construe tax statutes as imposing taxes with respect to matters of substance and not to matters of mere form. See, e.g., *Commissioner of Rev.* v. *J.C. Penney Co.*, 431 Mass. at 688.

In this case, however, the evidence does not support Tenneco's claim that the fees were fictional income. It billed its subsidiaries for the sums, and received those sums from the subsidiaries. The fact that it also loaned or gave money to those subsidiaries does not affect the analysis. Neither the management contracts, nor any other evidence offered, mention any

obligation by Tenneco to provide the funding for its services to its subsidiaries, and so any monies given from Tenneco to its subsidiaries must be viewed as a separate transaction. "If a man directed his bank to pay over income as received to a servant or friend, until further orders, no one would doubt that he could be taxed upon the amounts so paid." *State Tax Commn.* v. *Fitts*, 340 Mass. 575, 580 (1960), quoting from *Corliss* v. *Bowers*, 281 U.S. 376, 378 (1930).

Having chosen to comply with the covenant contained in its debentures by increasing its operating income, Tenneco is obligated, as a utility corporation, to pay taxes on that increase. "[W]hile a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not . . . and may not enjoy the benefit of some other route he might have chosen to follow but did not." *Romano* v. *Weiss*, 26 Mass. App. Ct. 162, 171 (1988), quoting from *Commissioner of Int. Rev.* v. *National Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 149 (1974). The decision of the board is affirmed.

> *Decision of the Appellate Tax*
> *Board affirmed.*